UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MOBIMEDS, INC. D/B/A THE PILL CLUB<br><br>Plaintiff,<br><br>v.<br><br>E-MEDRX SOLUTIONS, INC. AND DEBBIE DRENNAN<br><br><br><br>Defendants. | CASE NO.:<br><br><br><br><br><br>COMPLAINT AND JURY TRIAL DEMAND |

Plaintiff MobiMeds, Inc. d/b/a The Pill Club ("The Pill Club" or "Plaintiff"), complaining of Defendants, by and through their attorneys of record, Frier & Levitt, LLC and Giffin, Winning, Cohen & Bodewes, P.C., and hereby allege causes of action against the Defendants, and each of them, as follows:

## JURISDICTION AND VENUE

1. Plaintiff is a California corporation with its principal place of business at 969 Industrial Road, San Carlos, California.

2. This matter arises out of a dispute between a duly-licensed California pharmacy and a pharmacy services administration organization ("PSAO"), whereby the PSAO, E-MedRx Solutions, Inc. ("E-MedRx") has breached its contract with Plaintiff by failing to pay Plaintiff according to the parties' agreement and failing to account for the claims through which it was required to pay Plaintiff. Moreover, E-MedRx and its CEO—Defendant Debbie Drennan ("Drennan"), engaged in a pattern of fraud and deception with the purpose of diverting funds meant for Plaintiff for their own benefit. Additionally, Drennan abused the corporate form to divert money to herself from Plaintiff.

3. The Pill Club is a retail pharmacy organized and existing under the laws of the State of California with its principal place of business at 969 Industrial Road, Suite G, San Carlos, CA 94070.

4. Upon information and belief, E-MedRx is an Illinois corporation with its principle place of business located at 484 South Durkin Drive, Springfield, Illinois.

5. Upon information and belief, Defendant Debbie Drennan is a citizen of Illinois and president and CEO of E-MedRx.

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the action arises under the Constitution and laws of the United States.

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and Plaintiff and Defendants are citizens of different states.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in this District, and because Defendants conduct substantial business in this District.

## FACTS COMMON TO ALL COUNTS

**A.    The Parties**

9. Plaintiff is an independently owned retail pharmacy licensed by the California Board of Pharmacy in May 2015. The Pill Club dispenses birth control pills, emergency contraceptives as well as other birth control options.

10. E-MedRx is a Pharmacy Services Administration Organization ("PSAO").

11. As a PSAO, E-MedRx contracts with independent pharmacies thereby enrolling these pharmacies as participants in E-MedRx's pharmacy network. Through E-MedRx, the pharmacies are then allowed to participate in a variety of pharmacy benefit plans offered by health insurers and

oftentimes managed by pharmacy benefit managers ("PBMs").

12. More specifically, E-MedRx enters into contracts with various PBMs on behalf of the independent pharmacies in its pharmacy networks so that the pharmacies may service individuals whose pharmacy benefits are administered by the PBM.

13. Notably, many PBMs pay PSAOs directly for the pharmacy services rendered by the PSAO's member pharmacies.

14. For instance, when Plaintiff dispenses medication to a patient who receives her prescription drug coverage through a company that contracts with a PBM to administer the benefit, the PBM remits payment to E-MedRx who then, in theory, remits the payment to the Plaintiff.

15. To facilitate proper accounting, E-MedRx must submit an "Explanation of Benefits" ("EOB") to Plaintiff along with such payments, so that Plaintiff may determine which claims E-MedRx has paid.

**B.     The Dispute**

16. On or about April 25, 2018, The Pill Club entered into the agreement with E-MedRx, through which the parties agreed to perform according to certain terms, as described above.

17. As part of the Agreement and stated above, E-MedRx agreed to provide Plaintiff with a host of services including, though not limited to, claim reconciliation and payment, and "handl[ing] all processing issues" Plaintiff encountered related to the pharmaceutical services rendered. See Parties' Agreement, attached hereto as **Exhibit A**.

18. In fact, E-MedRx systematically failed to perform pursuant to the Agreement with respect to its obligation to provide proper claims reconciliation and remit monies due and owing to Plaintiff for claims submitted and adjudicated with various PBM and other payers.

19. Plaintiff has never received full remittance advices or EOBs for its claims since the inception of the parties' relationship.

20. Plaintiff has accomplished some accounting of the outstanding balance owed, based upon its review of its own claims that it has submitted for processing. According to that data, E-MedRx owes the Pharmacy not less than $2.5 million, and likely more.

21. Plaintiff first raised the issue of missing EOBs and remittances on or about September 17, 2018 by emailing Drennan asking for the documents. Drennan responded that E-MedRx had "IT issues" and needed an IT technician to access EOBs.

22. Plaintiff made over twenty more attempts via email and calls between September 17 and September 26 to acquire EOBs, though Drennan did not answer Plaintiff's calls, voicemails or emails.

23. On September 28, 2018, Drennan finally responded, stating, "On training call right now, funds and EOBs going out today." No such materials were delivered and no further response was forthcoming.

24. Based upon this exchange, and the fact that no EOBs were produced, upon information and belief, Plaintiff concluded that Drennan's assertion she had "IT issues" was a false statement.

25. After several more attempts to contact Drennan, she responded on October 1, 2018 with "I will be out the office 10/1/18 returning 10/9/18. I will have little access to emails. Please contact Jeannine. . . or Tammy. . . if you need assistance. Any payment or EOB issues please email me and I will get back to you." Plaintiff attempted contacting Jeannine and Tammy, who were employees of E-MedRx. Tammy informed Plaintiff that Drennan was the only person handling pharmacy business and they received many upset client calls but were unable to help. Plaintiff was advised to

continue reaching out to Drennan.

26. On October 3, 2018, Drennan responded to Plaintiff's persistent calls with "I'm so sorry, I'm traveling and when I send funds I have to enter this code and forgot. I will do first thing in morning. So overwhelmed right now that is why I'm trying to get Optum to send these payments to each site."

27. On October 8, 2018, Drennan responded to multiple calls with an email stating, "Payment went out Friday working on EOB's now."

28. On October 9, 2018, Drennan responded to Plaintiff's email asking for a funds update with "I'll call Bank first thing in morning."

29. On October 29, 2018, Plaintiff received only partial EOBs and a small payment of $212,574.77.

30. This pattern has continued into the present dispute, with the Plaintiff documenting Drennan's litany of excuses for her inability to perform according to the parties' Agreement, as listed below:

- December 5, 2018 – "We moved and we've had server issues sending funds Friday"
- December 10, 2018 – "Yes I'm so overwhelmed I'll get tomorrow thanks for reminder"
- December 13, 2018 – "It will hit tomorrow Alec and I did send check spam or junk let me I'll send again"
- January 8, 2019 – "I sent funds u should have tomorrow or wed"
- January 9, 2019 – "Need bank account number to transfer. Need TPC to fill out bank deposit forms"

- February 17, 2019– "Alec so sorry for not getting back between my granddaughter and e-Med was a victim of a hack. FBI have been working very hard but they say it's not likely to recoup money. I have not listed you guys yet as the FBI have shut down 3 pharmacies already. They will have to come and go through all your computers and stuff. It's been a nightmare. I'm to the point where the stress is not worth this! I'll try to call you tomorrow."

- February 19, 2019 - Meeting FBI today what should I do? (The Pharmacy's response was: "Hi Debbie! I'm not sure what you are asking me about. We didn't do anything wrong and I'm not understanding how your systems being hacked impacts us. I need two items - 1. Payment for last two months and 2. List of payers that still go through you.")

- March 9, 2019 – "My treatment is all day can we talk tomorrow or Monday"

- March 11, 2019 – "Going outside of hospital to call here in a bit"

- March 20, 2019 – "I'm sorry Alex mom was not good today I'll try you tomorrow and will be sending EOBS and funds Friday"

- March 26, 2019 – "Alex I'm a mess! Just released I had a nervous breakdown can I call you tomorrow?"

- March 28, 2019 – "I'm sorry Alex my mom had a cardiac arrest today back in ICU. You should get a check tomorrow…"

- April 4, 2019 – "Alex I just looked at my emails what about the attorney it says something by the 7th? Alex please give me some time to get my head on please"

- April 16, 2019 – "In session with my granddaughter I'll call when out"

- April 24, 2019 – "Sending check tomorrow and working on your 835s really hard to concentrate I have an empty feeling"

31. The above litany of excuses have never been factually supported by Defendants and, upon information and belief, represent a pattern of fraudulent behavior designed to induce Plaintiff into deferring any action to collect contractual payments or seek new PSAO services.

32. In the interim, on March 8, 2019, by way of letter, through counsel, Plaintiff informed E-MedRx that it was in material breach of the Agreement, and sought the following, or Plaintiff would terminate the Agreement under Section 4(b) thereof:

> (1) E-MedRx shall remit a sum of not less than $500,000 to the Pharmacy on or before April 6, 2019, representing the known, *minimum* unpaid claims processed through E-MedRx (the actual amount is likely much larger).
> (2) E-MedRx shall provide a full and complete accounting of all claims processed by the Pharmacy, monies received on behalf of the Pharmacy, and amounts paid to the Pharmacy. To the extent this accounting reveals additional funds due and owing to the Pharmacy, E-MedRx shall immediately remit payment therefor.
> (3) E-MedRx shall provide proof of financial solvency, subject approval by the Pharmacy in its sole discretion. This shall include an audited third party financial statement.
> (4) E-MedRx shall permit the Pharmacy full access to E-MedRx's books and records to conduct an audit of E-MedRx's records, in light of the aforementioned material breaches. This inspection shall be performed at E-MedRx's expense.
>
> See March 8, 2019 Demand Letter, attached hereto as **Exhibit B**.

33. E-MedRx failed to meet the above terms, submitting only two payments totaling only $275,000.

34. Concerned with Drennan's recalcitrance, Plaintiff searched public filings in an effort to better understand Defendants' business history. That search revealed that Drennan and E-MedRx had previously been sued twice before in the Central District of Illinois on counts including fraud,

conversion, breach of fiduciary duty, and other claims sounding in deceptive and fraudulent business practices. See Complaints attached hereto as **Exhibit C**.

35.     In an effort to amicably resolve the matter short of litigation, Plaintiff issued another Letter to Defendants on August 12, 2019, seeking no less than $2.5 million representing what Plaintiff calculated was the outstanding debt between the parties. See August 12, 2019 letter attached hereto as **Exhibit D**.

36.     On or about August 15, 2019, in response to requests from Plaintiff, Drennan stated she would produce all outstanding EOBs and proof of payment to Plaintiff for all outstanding claims. Drennan produced some documents, however, those documents did not substantiate payment of outstanding balances, nor did they establish a complete or even sufficient record of the parties' transaction history.

37.     To date, Defendants have been unable to establish a full record of the parties' transaction history, nor indeed, any indication that E-MedRx or Drennan ever performed or were ever capable of performing according to the terms of the parties' contract and their own representations.

38.     Moreover, Defendant Drennan's actions and inaction on behalf of E-MedRx, including but not limited to her assertion of personal problems in an attempt to defer the responsibilities of the corporation demonstrate such unity of interest and ownership in E-MedRx that the separate personalities of the corporation and Drennan no longer exist, and that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice upon Plaintiff.

## COUNT ONE
## BREACH OF CONTRACT

39.     Plaintiff repeats and re-alleges each of the allegations set forth in the paragraphs above as if set forth at length herein.

40. The Pill Club contracted with E-MedRx according to the terms of the parties' Agreement.

41. The Agreement governs the rights and obligations of the Parties' contractual relationship.

42. At all times relevant, Plaintiff performed in accordance with all material terms of the contract.

43. Despite Plaintiff's adherence to all terms of the contract, E-MedRx has never fully performed pursuant to those terms.

44. In fact, E-MedRx breached the contract by failing to properly process claims and remit payment and EOBs to Plaintiff on a regular basis.

45. Furthermore, E-MedRx is in further breach of its duty to collect and transmit payments to Plaintiff, as it is deficient in monies owed to Plaintiff in an amount of at least $2.5 million.

46. E-MedRx materially breached its obligations under the parties' Agreement.

47. As a direct result of that breach, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory and consequential damages in an amount to be proven as allowable by law together with interest and costs of suit, as allowable by law and attorney's fees as provided by the parties' contract.

### COUNT TWO
### FRAUD

48. Plaintiff repeats and re-alleges each of the allegations set forth in the paragraphs above as if set forth at length herein.

49. Beginning September 17, 2018, as set forth more fully above, Drennan made profusive excuses regarding Defendants' inability or refusal to meet the terms of the contract, including:

- On September 17, 2018, stating E-MedRx had "IT issues" that prevented it from sending EOBs and transmitting funds.

- On October 3, 2018, "I'm so sorry, I'm traveling and when I send funds I have to enter this code and forgot. I will do first thing in morning. So overwhelmed right now that is why I'm trying to get Optum to send these payments to each site."

- On October 8, 2018, "Payment went out Friday working on EOB's now."

- On October 9, 2018, "I'll call Bank first thing in morning."

- On December 5, 2018 – "We moved and we've had server issues sending funds Friday"

- On December 10, 2018 – "Yes I'm so overwhelmed I'll get tomorrow thanks for reminder"

- On December 13, 2018 – "It will hit tomorrow Alec and I did send check spam or junk let me I'll send again"

- On January 8, 2019 – "I sent funds u should have tomorrow or wed"

- On January 9, 2019 – "Need bank account number to transfer. Need TPC to fill out bank deposit forms"

- On January 17, 2019 – "Alec so sorry for not getting back between my granddaughter and e-Med was a victim of a hack. FBI have been working very hard but they say it's not likely to recoup money. I have not listed you guys yet as the FBI have shut down 3 pharmacies already. They will have to come and go through all your computers and stuff. It's been a nightmare. I'm to the point where the stress is not worth this! I'll try to call you tomorrow."

- On February 19, 2019 - Meeting FBI today what should I do? (The Pharmacy's response was: "Hi Debbie! I'm not sure what you are asking me about. We didn't do anything wrong and I'm not understanding how your systems being hacked impacts us. I need two items - 1. Payment for last two months and 2. List of payers that still go through you.")

- On March 9, 2019 – "My treatment is all day can we talk tomorrow or Monday"

- On March 11, 2019 – "Going outside of hospital to call here in a bit"

- On March 20, 2019 – "I'm sorry Alex mom was not good today I'll try you tomorrow and will be sending EOBS and funds Friday"

- On March 26, 2019 – "Alex I'm a mess! Just released I had a nervous breakdown can I call you tomorrow?"

- On March 28, 2019 – "I'm sorry Alex my mom had a cardiac arrest today back in ICU. You should get a check tomorrow…"

- On April 4, 2019 – "Alex I just looked at my emails what about the attorney it says something by the 7th? Alex please give me some time to get my head on please"

- On April 16, 2019 – "In session with my granddaughter I'll call when out"

- On April 24, 2019 – "Sending check tomorrow and working on your 835s really hard to concentrate I have an empty feeling"

- On August 15, 2019 – Drennan represented she always retained EOBs and sent them to Plaintiff along with all payments owed under the contract

50.  Upon information and belief all of these representations were asserted by defendants as part of a pattern of behavior designed to misrepresent facts in order to induce Plaintiff to defer action to enforce the parties' contract.

51. Plaintiff relied on these representations and continued to do business with Defendants.

52. Had Plaintiff known Defendants were misrepresenting the facts, it would have taken immediate action to enforce the parties' contract, collect outstanding amounts due at that time and would have sought a new PSAO.

53. As a direct and proximate result of Defendants' misrepresentations, Plaintiff has been damaged in the amount of funds Defendants retained for themselves or of which Defendants otherwise deprived Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, together with interest as well as the costs and disbursements of this cause of action

## COUNT THREE
## CONVERSION

54. Plaintiff repeats and re-alleges each of the allegations set forth in the paragraphs above as if set forth at length herein.

55. E-MedRx's retention payments destined for Plaintiff was never authorized, approved or agreed to by Plaintiff.

56. Instead, on multiple occasions, Plaintiff specifically demanded that Defendants disburse all of Plaintiff's monies to Plaintiff.

57. Accordingly, Defendants' assumption of control over Plaintiff's payments was unauthorized and wrongful.

58. On information and belief, Defendants have converted these funds for their own personal benefit.

59. Plaintiff has the right to immediate possession of these payments that is absolute, unconditional, and not dependent upon the performance of any other act.

60. Plaintiff's right to possession of the payments is being deprived by the unauthorized and wrongful assumption of control or dominion by Defendants.

61. Plaintiff has made demands that E-MedRx and Drennan return the wrongfully obtained payments to Plaintiff, but Defendants have refused to do so.

62. As a result of Defendants' wrongful conversion of Plaintiff's payments, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## COUNT FOUR
## ACCOUNTING

63. Plaintiff repeats and re-alleges each of the allegations set forth in the paragraphs above as if set forth at length herein.

64. Plaintiff has made repeated demands that Defendants account for the monies that they have received on Plaintiff's behalf.

65. Despite Plaintiff's demands, Defendants have to date refused to produce any such accounting or any information regarding the specific amounts received on behalf of Plaintiff.

66. An accounting is required in order for Plaintiff to determine what actions and damages it is entitled to against Defendants based upon their conduct.

67. Absent an accounting, Plaintiff may be deprived of the ability to redress the wrongs perpetrated against it by Defendants.

68. Accordingly, Plaintiff does not have an adequate remedy at law absent an accounting.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an order compelling Defendants to provide a full accounting of:

a. All monies received bearing Plaintiff's National Provider Identifier ("NPI") and/or "National Council for Prescription Drug Programs ("NCPDP") number[1];

b. All other monies received belonging to Plaintiff;

c. All monies either bearing Plaintiff's NPI or NCPDP number or otherwise belonging to Plaintiff that have been disbursed in any fashion to E-MedRx, Drennan, or any third party; and

d. Grant such other and further relief this Court deems proper and just.

## COUNT FIVE
## VIOLATION OF RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT, 18 U.S.C. § 1964

69. Plaintiff repeats and re-alleges each of the allegations set forth in the paragraphs above as if set forth at length herein.

70. Defendants' actions, including their prior actions as set forth in public filings, demonstrate that Defendants devised or intended to devise a scheme to defraud Plaintiff, or obtain Plaintiff's money by means of false or fraudulent pretenses, representations or promises, and they transmitted by wire, in the form of e-mails, writings for the purpose of executing their scheme.

71. Defendants' actions represent a pattern of racketeering activity, as defined in 18 U.S.C. § 1961, in that their actions throughout the course of their dealings with Plaintiff, as well as their activity with respect to other similarly situated parties in the past, were in the form of wire fraud as defined in 18 U.S.C. § 1343.

---

[1] These are the most commonly used identifiers for specific pharmacies.

72. 18 U.S.C. § 1962 prohibits any person who has received income derived from a pattern of racketeering activity to use or invest the proceeds therefrom in the operation of any enterprise engaged in interstate commerce; from acquiring or maintaining control in an enterprise engaged in interstate commerce; or for a person employed or associated with any enterprise engaged in interstate commerce to conduct that enterprise's affairs through a pattern of racketeering activity.

73. 18 U.S.C. § 1964 provides a civil cause of action for violation of 18 U.S.C. § 1962.

74. E-MedRx, which is an Illinois corporation, does business with Plaintiff, a California company, including collecting and processing payments from locations throughout the United States, including Minnesota, where the PBM Prime is located. E-MedRx is therefore engaged in interstate commerce.

75. Defendants transmitted many emails, as more fully described above, as part of a scheme to obtain Plaintiff's money by false pretenses and through fraudulent means.

76. Defendant Drennan has derived income from her own and E-MedRx's racketeering activity; has used proceeds from racketeering activity to acquire and maintain control of E-MedRx; and has conducted E-MedRx's affairs through a pattern of racketeering activity.

77. Plaintiff relied upon Defendants' fraudulent representations.

78. As a result of Defendants' racketeering activity, Plaintiff has suffered and continues to suffer damages in an amount of at least $2.5 million.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, including but not limited to treble damages, together with interest and costs of suit, attorney's fees, together with interest as well as the costs and disbursements of this cause of action

## COUNT SIX
## VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 et seq.

79. Plaintiff repeats and re-alleges each of the allegations set forth in the paragraphs above as if set forth at length herein.

80. As set forth more fully above, Defendants engaged in a pattern of deceptive and fraudulent behavior with the intent that Plaintiff would rely on its fraudulent and deceptive representations.

81. Defendants' fraudulent activity was in the conduct of trade or commerce.

82. 815 ILCS 505/2 prohibits unfair or deceptive acts or practices, including those employed by Defendants, in the conduct of any trade or commerce.

83. Plaintiff was damaged and continues to be damaged as a result of Defendants' unlawful practices.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, together with interest as well as the costs and disbursements of this cause of action.

## PRAYER FOR RELIEF

Plaintiff incorporates by reference each and every paragraph of this Complaint as through set forth here in full and further pray:

1. So far as the law and this Court allows, Plaintiff demands judgment against each Defendant on each count as follows:

   a. All available compensatory damages for the described losses with respect to each cause of action;

   b. Consequential damages;

c.  Disgorgement of profits obtained through unjust enrichment;

d.  Punitive damages with respect to each cause of action;

e.  Attorney's fees;

f.  Costs of this action;

g.  Pre-judgment and all other interest recoverable; and

h.  Such other additional and further relief as Plaintiff may be entitled to in law or in equity.

i.  As to Defendant Debbie Drennan, Plaintiff asks the court to pierce the corporate veil of E-MedRx and find Defendant Drennan personally liable for all damages awarded against E-MedRx and Debbie Drennan, personally.

## DEMAND FOR JURY TRIAL

Plaintiff MobiMeds, Inc., d/b/a The Pill Club demands a trial by jury on all of the triable issues of this Complaint.

By:  \_\_\_\_/s/ David A. Herman_____

Todd Mizeski, NJ Reg. No. 025122001 – Lead Counsel
(*Admission to CD of IL Pending*)
Steven L. Bennet, NJ Reg. No. 028562009
(*Admission to CD of IL Pending*)
**FRIER & LEVITT, LLC**
84 Bloomfield Avenue
Pine Brook, N.J. 07058
Tel. (973) 618-1660
Fax. (973) 618-0650
tmizeski@frierlevitt.com
sbennet@frierlevitt.com

        David A. Herman, IL Reg. No. 6211060 – Local Counsel
        Matthew R. Trapp, IL Reg. No. 6284154
        **GIFFIN, WINNING, COHEN & BODEWES, P.C.**
        1 West Old State Capitol Plaza, Suite 600
        Springfield, IL  62701
        Tel. (217) 525-1571
        Fax. (217) 525-1750
        dherman@giffinwinning.com
        mtrapp@giffinwinning.com

        Attorneys for Plaintiff

Dated: September 18, 2019