# EXHIBIT A



Account Name: 

# 2018 E-MedRx Solutions Participation Agreement

THIS THIRD PARTY NETOWRK PARTICIPATION AGREEMENT (this "Agreement") is dated as of April 25th, 2018 ("Effective Date") by and between E-MedRx Solutions, Inc. ("NETWORK") and

Mobimeds, Inc _____, a (" PHARMACY") under the laws of the State of California _____.

**RECITALS**

WHEREAS, NETWORK has been established to contract with various entities, such as employers, HMOs, PPOs, insurance companies, etc., which provide or pay for pharmaceutical services to Eligible Persons (as hereinafter defined) and to provide certain pharmaceutical services to pharmacies, and

WHEREAS, NETWORK desires that such pharmaceutical services be rendered through a Pharmacy who have joined NETWORK as a Network PHARMACY (as hereinafter defined), and

WHEREAS, PHARMACY is licensed under the laws of the State set forth next to PHARMACY's name in the first paragraph above to provide pharmaceutical services, and desires to become a "Network PHARMACY" pursuant to the terms and conditions hereinafter set forth;

NOW, THEREFORE, the parties agree:

1) **DEFINITIONS**
    a) "Contract" means any agreement between NETWORK and a Third Party Payer to purchase Pharmaceutical Services for Eligible Persons under specific terms and conditions.
    b) "Eligible Persons" means an employee or covered dependent that is entitled to prescription drug benefits under the terms of a Contract.
    c) "Network PHARMACY" means an Independent Pharmacy that has joined a Network Program and is a party to an active Network Participation Agreement with NETWORK.
    d) "Network Programs(s)" means those program(s) and services(s) offered from time to time by NETWORK to PHARMACY and for which PHARMACY has agreed to pay a fee to NETWORK.
    e) "Pharmaceutical Services" means the dispensing by PHARMACY of prescription drugs and services to Eligible Persons who are covered by a Third Party Payer program.
    f) "Third Party Payer" means any entity that pays for the purchase of Pharmaceutical Services on behalf of its Eligible Persons.

2) **AGREEMENTS OF PHARMACY**
    a) PHARMACY hereby joins NETWORK as a Network PHARMACY for a monthly fee.
    b) PHARMACY agrees to provide Pharmaceutical Services to Eligible Persons pursuant to the terms of applicable Contracts.
    c) PHARMACY and each of its pharmacists are duly licensed and qualified to operate a pharmacy and/or pharmacy pursuant to all applicable laws and are in good standing with all federal, state and local regulatory bodies. PHARMACY is in compliance with all requirements of HIPPA/HITECH, American with Disabilities Act, and all other laws and regulations applicable to PHARMACY.

1



Account Name: [        ]

d) All personnel employed by or contracted with PHARMACY are licensed or certified and supervised when and as required by law and have not been excluded from participation in federal or state health care programs or subject to any pending exclusion proceedings.

e) PHARMACY shall submit claims for Pharmaceutical Services to a third-party claims administrator designated from time to time by NETWORK, in approved National Council for Prescription Drug Programs (NCPDP) on-line telecommunications format or such other format required from time to time by NETWORK.

f) PHARMACY represents that the information on file with NCPDP is accurate and PHARMACY shall update its information (e.g. PHARMACY address, hours, etc.) with NCPDP and NETWORK upon a change in such information.

g) PHARMACY agrees to comply with all polices, ruled and regulation for the transaction of business with NETWORK now in effect and from time to time adopted by NETOWRK, including without limitation those in the Network Program(s) selected from time to time by PHARMACY.

h) PHARMACY acknowledges that it has selected one or more of the Network Programs currently offered by NETWORK and agrees to pay NETWORK the monthly fee(s) associated with the selected Network Programs(s). All monthly fees will be paid in U.S. Dollars in advance no later than the first day of each month. PHARMACY agrees that at all times PHARMACY shall be a participant in one or more of the Network Programs. PHARMACY acknowledges and agrees that NETWORK may from time to time add, deleted or modify one or more Network Programs (including, without limitation, the benefits provided and the monthly fee) and PHARMACY agrees that such additions, deletions and modifications shall be binding on the PHARMACY after notice of such is sent to PHARMACY.

i) PHARMACY will allow duly authorized employees, representatives and agents of NETWORK, upon reasonable notice, free access during regular business hours to inspect the books, records, signature logs, invoices, and prescription files of PHARMACY as may be reasonably necessary for verification of information relevant to the performance and administration of this Agreement. PHARMACY will retain and preserve all claim records and signature logs for audit, and this provision shall continue for a period of seven (7) years following the termination of this Agreement.

j) PHARMACY shall promptly notify NETWORK after any change in the form of the organization of PHARMACY, any change in the ownership or control of PHARMACY or PHARMACY's business, any merger involving PHARMACY, any sale of all or substantially all of PHARMACY assets, or any liquidation or dissolution of PHARMACY.

k) PHARMACY agrees not to collect any payment from any Eligible Person for Pharmaceutical Services provided pursuant to a Contract, other than such co-payment as may be defined therein and to otherwise fully comply with each Contract.

l) PHARMACY shall maintain and keep in force, during the term of this Agreement, insurance covering professional malpractice and general liability including blanket contractual liability in **amounts of not less than $1,000,000 per occurrence and $3,000,000 in the aggregate. Insurance** procured by PHARMACY will not reduce or eliminate PHARMACY's contractual obligation to indemnify NETWORK.

m) Except for a breach of the confidentiality section of this Agreement, each of NETWORK and PHARMACY agree to limit their liability to the other for any breach of this Agreement to actual and/or direct damages and, accordingly, in no event shall NETWORK or PHARMACY be liable to the other for any consequential, exemplary, punitive, special, or indirect damages, and each is hereby excluded by a agreement of the parties, regardless of whether or not NETWORK or PHARMACY has been advised of the possibility of such damages. To the extent of NETWORK makes arrangements with certain third parties to offer goods or services to PHARMACY, PHARMACY agrees and hereby does waive all claims for loss, damage, liability, injury, cost or expenses incurred or alleged to have been incurred by PHARMACY or its affiliates or their respective employees, representatives and agents against NETWORK and its affiliates and their respective employees, representatives and agents as a result of having purchased or used such goods and services, including all claims of failure of such goods or services.

n) PHARMACY agrees it shall comply with all federal, state, local and other laws, rules and regulation applicable to its business, including those relating to the filling prescriptions. PHARMACY agrees to indemnify and hold harmless NETWORK, NETWORK's affiliates, NETWORK's clients under the Contracts and their respective employees, agents, and representatives against any and all claims, causes of action, costs, fees (including reasonable attorneys' fees),


Account Name: [        ]

liabilities, debts obligations and judgments, arising out of or in connection with or resulting from the acts or omissions of PHARMACY or its affiliates of their respective employees, agents and representatives.

   o) PHARMACY acknowledges that neither NETWORK nor any of its affiliates nor any of their respective employees, agents or representatives has made any representations, warranties or promises as to the profit to be realized by PHARMACY from this Agreement, and PHARMACY acknowledges that the profits to be realized from PHARMACY's business are dependent on many various factors, most of which are in the sole control of PHARMACY.

   p) PHARMACY represents and warrants to NETWORK that PHARMACY is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization and has all power and authority to execute and deliver this Agreement.

## 3) AGREEMENTS OF NETWORK

a) NETWORK shall negotiate and solicit Contracts from Third Party Payers to purchase Pharmaceutical Services (on behalf of Eligible Persons) from Network Pharmacies. In negotiating payment for services under the Contracts, NETWORK will be guided both by the business needs of the Network Pharmacies and the competitive forces in the healthcare marketplace.

b) NETWORK shall use its best efforts to provide PHARMACY the services contemplated by the Network Program(s) selected.

c) Network shall handle all credentialing and manage NCPDP file for updates.

d) Network shall handle all processing issue the PHARMACY encounters.

e) **Network shall sign on behalf of pharmacy for the independent contracts that are required by PBM's, this agreement shall give E-MedRx the right to sign for the pharmacy strictly for Independent contracts. Sign Addendum A to allow E-MedRx to sign Independent Contracts with PBM's.**

f) Prime Therapeutics (PBM) is Central Pay, E-MedRx will ACH funds directly to the pharmacy.

## 4) TERMS AND TERMINATION

a) Subject to the termination provisions set forth below, the term of this Agreement will commence on the Effective Date and end on April 25th, 20 19. Thereafter, this Agreement will automatically renew for successive one (1) year periods, unless either party gives notice of non-renewal not less than ninety (90) days prior to the expiration of the initial term of any current renewal term.

b) This Agreement may be terminated by a party if the other party commits a material breach of this Agreement and if such breach is not cured within sixty (30) days after written notice of the breach from the non-breaching party. NETWORK may terminate this Agreement if PHARMACY fails to pay any amount due and such failure is not cured within five (5) days after written notice of such failure is provided.

c) This Agreement may be terminated immediately by a party; (i) if the other party becomes excluded from participation in Medicare, Medicaid or other federally funded health care program; (ii) in the event of any proceedings, voluntary or involuntary, in bankruptcy or insolvency by or against the other party, the inability of the other party to meet its debts as they become due, or in the event of the appointment of an assignee for the benefit of creditors, a trustee in bankruptcy, or receiver or similar entity; (iii) if the other party fails to comply with any law which may result in the forfeiture of property or other law when non-compliance may have a significant, adverse effect on the ability of the other Party to perform its obligations pursuant to this Agreement; or (iv) if either party discontinues the business it currently operates.

d) Upon expiration or earlier termination of this Agreement, neither party shall have any further obligations hereunder, except for obligations accruing prior to the date of expiration or earlier termination.

## 5) MISCELLANEOUS PROVISIONS

3



Account Name: ☐

a) Notwithstanding anything to the contrary contained herein, PHARMACY acknowledges and agrees, on behalf of itself and each of its affiliates and other purchasers, that NETWORK is not the manufacturer of any products. NETWORK (on behalf of itself and its affiliates) disclaims all warranties, express or implied, including those of merchantability, not-infringement and fitness for a particular purpose, and no oral or written information provided by NETWORK or its affiliates or their affiliates be liable for any claims, causes of action, obligations, liability, liens, indebtedness, debts, judgments, damages (of any kind and nature), losses, costs, expenses, and fees (including, without limitation, reasonable attorney, expert and accountant fees) ("Losses"), including without limitation, bodily injury or death, resulting from an individual's use of the any products, except to the extent caused by the negligence of NETWORK. In no event shall NETWORK or its affiliates be liable for any special indirect, incidental, exemplary, punitive or consequential damages (including, without limitation, lost profits) even if PHARMACY has been advised of such damages.

b) Each party represents and warrants that it will comply with all applicable laws, including, but not limited to, the Anti-Kickback Statue, 42 U.S.C 1320a-7b, including the reporting requirements of 42 C.F.R 1001.952(h) regarding "safe harbor" protection for discounts.

c) Any notice, approval consent or other communication concerning this Agreement shall be in writing, sent via facsimile, secured electronic mail, certified mail or overnight delivery service to the parties at the address or number indicated on the signature page of this Agreement (or at such other address or number as the parties specify by written notice to the other).

d) NETWORK grants no exclusive rights or areas under this Agreement. PHARMACY acknowledges and agrees that NETWORK may enter into agreements with one or more pharmacies or retailers serving the same trading area as PHARMACY serves and for which PHARMACY shall have absolutely no recourse against NETWORK.

e) PHARMACY agrees that NETWORK may use PHARMACY's name, address and telephone number in directories or lists of Network Pharmacies.

f) This Agreement confers no right of PHARMCY to use, and NETWORK reserves the exclusive right to control and use, any and all trademarks, trade names, services marks, advertising or other commercial symbols belonging to NETWORK or any affiliated entity. Without limiting the foregoing, PHARMACY agrees and acknowledges that it has been informed by NETWORK that the name "E-MedRx Solutions" and "Third Party Network" and all other derivations thereof and all other similar terms used by NETWORK are the sole and exclusive property of NETWORK, and PHARMACY has no right to use any such names or any similar trademark, trade name, services mark, advertising or other commercial symbol, including without limitation, in any advertising or promotional materials, unless otherwise agreed in writing by NETWORK.

g) PHARMACY shall keep all information learned about NETWORK or its affiliates (such as programs, prices, rules, financial information, governing documents and procedures ("Confidential Information")) completely confidential within PHARMACY's organization and PHARMACY agrees not to use such Confidential Information except in the performance of this Agreement and agrees not to disclose such Confidential Information except to those employees of PHARAMCY who need the Confidential Information to carry out this Agreement and who agree in writing to protect the confidentiality of the Confidential Information.

h) Should suit be brought hereunder, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

i) The invalidity or unenforceability of any term of provision of this Agreement shall in no way affect the validity or enforceability of any other term of provision.

j) This Agreement constitutes the entire understanding between the parties hereto and shall not be altered or amended except by a writing signed by the duly authorized representatives of both parties. This Agreement supersedes and replaces any prior Network Participation Agreement or similar agreement covering the subject matter hereof to which PHARMACY and NETWORK are a party.

k) Violation of the terms of this Agreement by a party shall entitle the other party, among the remedies available to it, to appropriate equitable relief, such as relief by injunction, because the parties understand that a violation of many of the provisions of this Agreement (including, without limitation, the confidentiality provision) would not be adequately



Account Name: ▢

remedied by money damages. A party shall not have been deemed to make any election of remedies in the event it terminates this Agreement or seeks any type of relief, including, without limitation, injunctive relief any may, in addition, recover any damages available at law or in equity.

l) This Agreement shall be governed by the laws of the State of Illinois. The parties hereby irrevocably and unconditionally (i) agree that any action or proceeding arising out of or in connecting with this Agreement shall be brought only in a state or federal court sitting in the State of Illinois, City of Springfield , and not in any other state or federal court in the United States of America or any court in any other country, (ii) consent to submit to the exclusive jurisdiction of such courts for purposes of any action of proceeding arising out of or in connection with this Agreement, and (iii) waive any objection to the laying of venue of any such action or proceeding in such courts.

m) This Agreement may not be assigned (whether by operation of law or otherwise) by PHARMACY without the prior written approval of NETWORK. NETWORK may assign this Agreement without the prior written consent of Pharmacy to an affiliate or successor entity if such entity assumes NETWORK's obligations hereunder.

n) The relationship of the parties hereto is that of independent contractors, and this Agreement does not create a joint venture, partnership agency. Neither PHARMACY not NETWORK will have any authority to hire, fire, direct or direct any employees of the other, nor is neither PHARMACY nor NETWORK responsible for the collection, withholding or payment of any taxes of the other.

6) **FEES**

PHARMACY shall pay to NETWORK setup fee of $200.00 and a monthly fee of One Hundred and Eighty and 00/100 Dollars ($180.00) per pharmacy for NETWORK benefits, said benefits are as follows:

- Establish NCPDP number
- Enhanced Contracting
- Negotiating
- Resolution for processing issues
- Help Desk
- Updates on all PBM's
- Reconciliation (when available) $100.00 additional a month
- Bin-PCN changes/updates
- Assist with contracts that are independent
- Credentialing with all PBM's
- MAC Appeals
- Update on license and DEA

**IN WITNESS WHEREOF, the** parties have executed and delivered this Network Participation Agreement as of the Effective Date.

"NETWORK"

E-MedRx Solutions, Inc.

▬▬▬▬

Springfield, IL 62704

"PHARMACY"

Mobimeds, Inc _____ (Legal Name)

▬▬▬▬▬▬▬▬▬▬ (Address)

San Carlos, CA 94070 _____ (Address)

5



Account Name: ☐

Fax#: 800-830-1813

Email: ddrennan@e-medrxsolutions.com

By: _____

Printed: **Debbie Drennan**

Title: **CEO**

FAX#: 888-873-6994

EMAIL: pharmacy@mobimeds.com

By: /s/ Roy N. Chang

Printed: Roy N. Chang

Title: CEO

NCPDP#: 5654517

**PLEASE RETURN TO**

Phone: 217-697-5533     Fax: 800-830-1813     ddrennan@e-medrxsolutions.com

6