**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MOBIMEDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-3224 (CSB) (TSH) |
| | ) | |
| E-MEDRX SOLUTIONS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

James B. Novy
Patrick R. Moran
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000 – Tel.
312.494.1001 – Fax
jnovy@rfclaw.com
pmoran@rfclaw.com
*Attorneys for Defendants*
*E-MedRx, Inc. and Debbie*
*Drennan*

# **TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………...1

FACTUAL ALLEGATIONS……………………………………………………………...1

    The Agreement At Issue…………………………………………………………...1

    The Loss…………………………………………………………………………...2

    Plaintiff Terminates the Agreement………………………………………………2

    The Prior Lawsuits Against E-MedRX……………………………………………3

STANDARD OF DISPOSITION…………………………………………………………5

ARGUMENT……………………………………………………………………………...5

    I.     The Breach of Contract Claims In Count II Fail………………………………..5

    II.    The Fraud Claim in Count III and the UDTPA Claim in Count VIII Fail………..6

          A.  The Complaint does not meet Rule 9's

              heightened pleading requirement…………………………………………6

          B.  Allegations of future conduct do not support a claim for fraud…………..9

    III.   The Claims for Conversion and Breach of Fiduciary Duty

         Are Barred by the *Moorman* Doctrine……………………………………………9

    IV.   The Breach of Fiduciary Duty Claim in Count IV Fails…………………………11

    V.    The Conversion Claim in Count V Fails…………………………………………12

    VI.   The Accounting Claim in Count VI Fails………………………………………...12

    VII.  The RICO Claim in Count VII Fails……………………………………………...12

          A.  Plaintiff fails to allege a pattern of racketeering activity……………........13

          B.  Plaintiff fails  to allege that the predicate crimes are continuous……........14

    VIII. There Is No Basis For Individual Or Shareholder Liability Of Drennan………….15

    IX.   The Prayers For Damages Beyond The Contractual

         Limitation Should Be Stricken…………………………………………………...15

CONCLUSION…………………………………………………………………………...15

**TABLE OF AUTHORITIES**

*3Com Corp. v. Electronics Recovery Specialists, Inc.*,

    104 F.Supp.2d 932, 941–42 (N.D. Ill. 2000)……………………………………………11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)………………………………………………….5

*Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)…………………………………6

*Beach v. Miller*, 130 Ill. 162, 170, 22 N.E. 464, 466 (1889)…………………………………15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007)……………………………………5

*Bower v. Jones,* 978 F.2d 1004, 1011 (7th Cir. 1992……………………………………………9

*Catalan v. GMAC Mortg. Corp.,* 629 F.3d 676, 693 (7th Cir.2011)……………………….....10

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,

    210 F. Supp. 3d 1022, 1038 (S.D. Ill. 2016)…………………………………………………11

*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.,*

    636 N.E.2d 503, 514, 159 Ill.2d 137, 164 (1994)…………………………………………10

*Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir. 1993)……………………….9

*Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013)……………13

*East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871–874 (1986)……..10

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)……………………….5

*Envision Healthcare, Inc. v. Fed. Deposit Ins. Corp.*,

*Elson v. State Farm Fire & Cas. Co.,* 295 Ill.App.3d 1 (1998)……………………………………5

    2014 WL 6819991(N.D. Ill. Dec. 3, 2014)………………………………………………......5

Fed.R.App.P. 4(a)(1)(A)……………………………………………………………………………..8

Fed.R.Civ.P. 41(b)…………………………………………………………………………………..8

*Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,*

    412 F.3d 745, 748-49 (7th Cir. 2005)………………………………………………………7

*Fireman's Fund Ins. Co. v. SEC Donohue, Inc.,*

    679 N.E.2d 1197, 1199, 176 Ill.2d 160, 223 Ill.Dec. 424 (Ill.1997)……………………….9

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)…………………………………………14

*Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)…………………………………......6

*Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994)………………………………4

*Ill. State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468, 480–81 (1st Dist. 2012)…………11

*In re Ill. Bell Switching Station Litig.,* 641 N.E.2d 440, 443–444, 161 Ill.2d 233 (1994)............10

*IOS Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill. App. 3d

     366, 372, 808 N.E.2d 606, 611 (4th Dist. 2004)................................................15

*Jepson, Inc.*, 34 F.3d 1321 (7th Cir. 1994)................................................................14

*Lidecker v. Kendall College,* 194 Ill.App.3d 309, 550 N.E.2d 1121, 1124 (1st Dist. 1990)..........6

*Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 327 Ill. App. 3d 346, 351, 763

     N.E.2d 428, 434 (2002) ................................................................................10

*McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir. 1994)............................................13

*Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019)..................................13

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992)............................13, 14

*Moorman Mfg. Co. v. Nat'l Tank Co.,*

     435 N.E.2d 443, 453, 91 Ill.2d 69, 61 Ill.Dec. 746 (Ill.1982)..............................9, 10

*Norem v. Lincoln Benefit Life Co.,* 737 F.3d 1145, 1148 (7th Cir. 2013)..............................5

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*,

     631 F.3d 436, 441 (7th Cir. 2011).......................................................................7

*Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 759

     (N.D. Ill. 1997), *aff'd,* 234 F.3d 1273 (7th Cir. 2000)......................................6, 9

*Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois*,

     424 F.3d 659, 672 (7th Cir. 2005)....................................................................14

S. Rep. No. 91-617 (1969)..................................................................................12

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985)..........................................12

*Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001).......................13

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)............................................6

*Tartt v. Northwest Comm. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006)..................................8

*Technic Eng'g, Ltd. v. Basic Envirotech, Inc.*,

     53 F. Supp. 2d 1007, 1010–11 (N.D. Ill. 1999)................................................15

*Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 924 (7th Cir. 1992)...............................7

*VW Credit, Inc. v. Friedman & Wexler, LLC*,

     2010 WL 2330364, at \*3 (N.D. Ill. June 7, 2010).........................................11, 12

*Wendorf v. Landers*, 755 F. Supp. 2d 972, 980–81 (N.D. Ill. 2010)..................................12

*Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 567 (7th Cir. 2012)……………………………10

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)……………………………………………5

## INTRODUCTION

This case arises out of an alleged contract dispute, wherein Plaintiff claims that E-MedRx Solutions, Inc. ("E-MedRx') and its President and Chief Executive Officer, Debbie Drennan, failed to pay Plaintiff $2.5 million pursuant to the contract. From there, Plaintiff tries to manufacture a much broader and elaborate scheme involving fraud, conversion, accounting, RICO violations and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, without any factual bases for making such claims. With the exception of Count I, Plaintiff's Complaint should be dismissed because it fails to provide the minimal factual threshold required under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), let alone sufficient facts to meet the heightened pleading requirement for claims of fraud under Fed.R.Civ.P. 9.

## FACTUAL ALLEGATIONS

Plaintiff operates a specialty pharmacy in California. (ECF No. 13, ¶2, 9). Plaintiff often obtains payment for the prescription drugs it provides directly from its customers' insurance companies or pharmacy benefit managers ("PBM"). (*Id.*, ¶8). E-MedRx is a Pharmacy Services Administrative Organization ("PSAO") which provides billing and administrative support for pharmacies. (*Id.*, ¶¶11-12). As a PSAO, E-MedRx processes claims on behalf of pharmacies like Plaintiff and collects insurance payments made by health insurance companies and PBMs intended for independent pharmacies. (*Id.*, ¶¶11-15).

### The Agreement at Issue

On April 25, 2018, Plaintiff entered into a Solutions Participation Agreement (the "Agreement") with E-MedRx, wherein E-MedRx agreed to serve as Plaintiff's PSAO. (*See* ECF No. 13, ¶¶16-17; *see also* the Agreement, ECF No. 13-1). As Plaintiff's PSAO, E-MedRx was to reconcile and collect monies paid by insurance companies and PBMs and then provide the payments to Plaintiff. (*Id.* at 3). E-MedRx submitted an Explanation of Benefits ("EOBs") to Plaintiff along with money so that

1

Plaintiff could track and correspond the money it received with the pharmaceutical goods that it provided. (ECF No. 13, ¶15).

## The Loss

A few months after the parties executed the Agreement, Plaintiff contacted E-MedRx about missing EOBs and payments. (ECF No.13, ¶21). Plaintiff alleges E-MedRx "systemically" failed to perform its obligation to provide proper claims reconciliation and remit monies due and owing to Plaintiff for claims submitted and adjudicated with various PBM and other payers. (*Id.*, ¶18). According to Plaintiff's own internal data, none of which is described or otherwise specified in the Complaint, E-MedRx allegedly owes Plaintiff "not less than" $2.5 million, and likely more. (*Id.*, ¶19).

Plaintiff first advised E-MedRx regarding the missing EOB's and payments in September 2018. (ECF No. 13, ¶21). Drennan responded with a number of different "excuses" and promises, which Plaintiff ultimately concluded must be false. (*Id.*, ¶¶23-31). Plaintiff believes the statements by Drennan are part of a "pattern of fraudulent" behavior designed to "induce Plaintiff into deferring any action to collect," even though all of Plaintiff's communications with E-MedRx and/or Drennan were allegedly made for the purpose of collecting. (*Id.*, ¶¶22-30). There are no facts in the Complaint, however, to establish that Drennan made knowingly false or material statements, or that Plaintiff reasonably relied on any of Drennan's statements. Plaintiff also alleges Drennan fraudulently concealed her involvement in the fraud, but there are no facts to support this allegation either.

## Plaintiff Terminates the Agreement

In March 8, 2019, Plaintiff's attorney sent E-MedRx a letter declaring the contract to be in material breach as a result of failure to remit $500,000, not the $2.5 million Plaintiff is now claiming in this lawsuit. (*See* the 3/8/2019 Letter, attached as part of Exhibit A to the Complaint at ECF No. 13-1). There are no facts included in the Complaint to explain the drastic $2 million

increase.  In the letter, Plaintiff provides a list of demands to cure the alleged breach, including a $500,000 payment, an accounting of the claims E-MedRx handled for Plaintiff, "proof of financial solvency" and complete access to all of E-MedRx's financial records for an inspection to be conducted at E-MedRx's expenses.  (*Id*.).  The letter also set a deadline of April 7, 2019 for the demands to be met; otherwise the Agreement would be immediately terminated as of April 8, 2019.  (*Id*.).  The demands were not met, which means, per the letter, the Agreement terminated as of April 8, 2019.  (*Id*.).

On August 15, 2019, Plaintiff sent another demand letter to E-MedRx, which made an increased demand in the amount of $2.5 million, again without explaining the factual bases for the demand or the increase.  (*See* Exhibit D at ECF No. 13-1).  The letter notes that Plaintiff had previously indicated it would terminate the Agreement under Section 4(b) of the Agreement if Plaintiff's demands were not met.  This time, the letter states Plaintiff will file a lawsuit unless E-MedRx submits a payment of $2.5 million.

### The Prior Lawsuits Against E-MedRx

Plaintiff argues the existence of prior lawsuits against E-MedRx and Drennan are sufficient to establish a pattern of wrongful conduct.  (ECF No. 13, ¶34).  According to Plaintiff, E-MedRx and Drennan were sued in 2015 for making unauthorized distributions (the "AAYH Lawsuit"), which led to the entry of a consent order in which E-MedRx and Drennan agreed to provide an accounting for the transfer of funds, refund all payments and refrain from transferring any further funds to third parties.  (ECF No. 13., ¶34).  The dispute stemmed from Drennan's decision to leave a former employer and start her own business.  She thought the plaintiff in that lawsuit was moving with her to the new business, but AAYH did not share the same view.  (*See All About Your Health,*

*Inc. v. E-MedRx Solutions, Inc., et al.*, No. 15-cv-3096, ECF No. 1).[1]  Importantly, the request for

a TRO in that case was denied because AAYH had failed to provide specific facts showing

irreparable harm was imminent.  (*See* 3/30/2015 Text Order in No. 15-cv-3096).  The lawsuit was

resolved shortly thereafter through an agreed-upon consent order, in which E-MedRx and Drennan

did not admit or deny any of the findings of fact in the consent order.  (*See* No. 15-cv-3096, ECF

No. 8).  After the entry of the order, there was so little activity in the case the court had to issue an

order to show cause for the plaintiff to explain why the case should not be dismissed for want of

prosecution.  (*See* No. 15-cv-3096, ECF No. 12).  Weeks later, the case was terminated.  (*See* No.

15-cv-3096, ECF No. 13).

      The other lawsuit, *Empire Specialty Pharmacy Corp. v. E-MedRx Solutions, Inc., et al*.,

3:18-cv-3118 (SEM) (TSH) (the "Empire Lawsuit"), arose out of the cybertheft of approximately

$379,000 from E-MedRx in 2018, which E-MedRx had intended to send to Empire.  In the scam,

known as "phishing," unknown hackers used a convincing yet fraudulent email purporting to be

from Empire's Chief Financial Officer, which requested that E-MedRx send the funds to a different

Chase bank account than the one Plaintiff had been using at Chase.  (*See* No. 15-cv-3096, ECF

No. 8).  Upon learning of the theft, E-MedRx promptly alerted law enforcement authorities.

Empire, however, alleged it was E-MedRx and its President Debbie Drennan, not unknown

hackers, who took the money and concocted a false cybertheft story to explain the loss.  (*See* No.

15-cv-3096, ECF No. 8).  E-MedRx filed a motion to dismiss pursuant to Rule 12(b)(6).  (*See* No.

15-cv-3096, ECF Nos. 17, 18, 25 and 31).  After the motion was fully briefed, Empire's lawyer

withdrew and E-MedRx filed a motion to dismiss for want of prosecution (*See* No. 15-cv-3096,

ECF No. 38), which was granted on February 12, 2019 (*See* No. 15-cv-3096, ECF No. 38).

---

[1] *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (noting that courts can take judicial notice of court records that are matters of public record in ruling on a motion to dismiss).

Judgment was entered in favor of E-MedRx and Drennan on February 13, 2019. (*See* No. 15-cv-3096, ECF No. 39).

**STANDARD OF DISPOSITION**

To survive a motion to dismiss, a complaint must allege enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the speculative level. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citation omitted). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

**ARGUMENT**

**I.      The Breach of Contract Claims In Count II Fail.**

To prove a breach of contract in Illinois, the plaintiff must show the existence of "a valid contract, performance by the plaintiff, breach by the defendant, and damages." *Envision Healthcare, Inc. v. Fed. Deposit Ins. Corp.*, 2014 WL 6819991, at *4 (N.D. Ill. Dec. 3, 2014) citing *Norem v. Lincoln Benefit Life Co.,* 737 F.3d 1145, 1148 (7th Cir. 2013) (citing *Elson v. State Farm Fire & Cas. Co.,* 295 Ill.App.3d 1 (1998)).

In Count II, Plaintiff claims E-MedRx breached the Agreement by terminating it sometime in September 2019 contrary to the terms of the Agreement. However, Exhibits A and D to Plaintiff's own Complaint establishes that it – not E-MedRx – terminated the Agreement pursuant to Paragraph 4(d) of the Agreement. A plaintiff can "plead himself out of court by pleading facts

that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). This occurs when the complaint includes "facts that establish an impenetrable defense to its claims." *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)).

## II.     The Fraud Claim in Count III and the UDTPA Claim in Count VIII Fail.

In Counts III and VIII, Plaintiff brings claims for common law fraud and violations of the Uniform Deceptive Trade Practices Act.  Both claims fail, however, because neither meet the heightened pleading standard of Rule 9(b).  In addition, the claims should be dismissed to the extent they are based on promises of future conduct, which cannot provide the basis for the fraud claims.

### A.     The Complaint does not meet Rule 9's heightened pleading requirement.

To allege fraud under Illinois law, a plaintiff must allege facts showing the defendant made a false statement or omission of material fact, with the intent to deceive and induce the plaintiff to act.  *Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997), *aff'd*, 234 F.3d 1273 (7th Cir. 2000), *quoting Lidecker v. Kendall College,* 194 Ill.App.3d 309, 550 N.E.2d 1121, 1124 (1st Dist. 1990).  Rule 9(b) requires that, when alleging fraud or mistake, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." FRCP 9(b) (West 2015).

The Complaint contains 27 paragraphs of allegations purportedly detailing fraudulent conduct (*see* ECF No. 13, ¶¶ 22-30), but there are no facts in the Complaint to show the falsity of any misrepresentations or to support the conclusory allegations.  Instead, the Complaint provides snippets of conversations in which Drennan allegedly tried to explain away the non-payment, followed by Plaintiff's unsupported belief that Drennan's explanations for the non-payments were false.  (*Id.*, ¶¶30-31).  This conclusory allegation only serves to confirm that Plaintiff has no facts

to offer and is just guessing what might be, which means Plaintiff is on a fishing expedition. Rule 9 was intended to prevent exactly that type of litigation strategy. The particularity requirement of Rule 9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co*., 631 F.3d 436, 441 (7th Cir. 2011). The particularity requirement "forces the plaintiff to conduct a careful pretrial investigation" and minimizes the risk of extortion that may come from a baseless fraud claim. *Id.*, *citing Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 748-49 (7th Cir. 2005).

Plaintiff's use of the phrase "on information and belief" likewise confirms the lack of factual support. (ECF No. 13, ¶65). A plaintiff generally cannot rest on allegations made "on information and belief" to support a fraud claim. *Perelli*, 631 F.3d at 443. An exception exists if: (1) the facts constituting the fraud are not accessible to the plaintiff; and (2) the plaintiff provides "the grounds for his suspicions." *Id.*, quoting *Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 924 (7th Cir. 1992). Plaintiff cannot establish either, however, because it cannot even settle on how much it is owed, let alone provide any factual basis for its claim for $500,000 in its demand letter or the whopping increase to $2.5 million it decided to claim in this lawsuit. This only underscores the speculative nature of the fraud claims. Equally implausible are allegations that Plaintiff relied on alleged misrepresentations that were made *after* the alleged fraud occurred. There are no facts to suggest Plaintiff relied on any of these misrepresentations or how statements made *after* the alleged theft could have proximately caused its loss.

Plaintiff also tries to cover for this pleading failure by pointing to the lawsuits filed by AAYH and Empire for the proposition that the allegations from these lawsuits establish a pattern of wrongful activity by E-MedRx. Not only are there no similarities between this case and the allegations in the other two lawsuits, but as a matter of law, the allegations in the Empire Lawsuit

cannot be used to establish any wrongdoing, because that case was dismissed for want or prosecution pursuant to Rule 41(b). (*See* No. 15-cv-3096, ECF No. 38, 39). *See Tartt v. Northwest Comm. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006) (citations omitted). If a court dismisses an action for want of prosecution pursuant to Rule 41(b) and the plaintiff does not appeal or move to reconsider within 30 days, the dismissal becomes a judgment on the merits. *Id.*, *citing* Fed.R.App.P. 4(a)(1)(A) (other citations omitted); *see also* Fed.R.Civ.P. 41(b) (Unless the dismissal order states otherwise, a dismissal under this section and any other not under this rule – except dismissals based on jurisdiction, venue or failure to join third parties – operates as an adjudication on the merits. The Empire allegations were abandoned and subsequently adjudicated in favor of E-MedRx through a dismissal for want of prosecution, and no appeal was filed; therefore, Plaintiff cannot rely on the Empire Lawsuit.

Nor does the AAYH Lawsuit support Plaintiff's farfetched theory. Plaintiff, not surprisingly, omits that the AAYH's request for a TRO was denied because there were no facts showing that irreparable harm was imminent. (*See* 3/30/2015 Text Order in *AAYH v. E-MedRx*). Plaintiff also omits that the lawsuit was resolved shortly thereafter through an agreed-upon consent order in which E-MedRx did not admit or deny any findings of fact, and that the plaintiff had effectively abandoned the case after the order was entered, resulting in a termination of the proceedings. Moreover, this Court previously rejected a similar attempt to prop up fraud allegations in the Empire Lawsuit using the AAYH Lawsuit:

> [Empire] has alleged E-MedRx and Drennan acted fraudulently in diverting its money, but [Empire] has not shown those Defendants are "about fraudulently to" dispose of assets to hinder recovery by [Empire]. [Empire's] citation to *All About Your Health, Inc. v. E-MedRx Solutions, Inc. and Debbie Drennan*, 15-cv-3096 (C.D. Ill. 2015) to support its argument that E-MedRx and Drennan would "do anything to avoid their responsibilities to [Empire]" is not persuasive. In *All About Your Health*, Drennan and E-MedRx participated fully in the case, and that case was resolved by the agreement of the parties. Those facts do not show the desperate,

unpredictable, and fraudulent behavior [Empire] claims they do. In fact, if anything, Drennan and E-MedRx's participation and agreed settlement of that case show a track record of resolving disputes in an appropriate manner.

*(See* Order on Empire's Motion for Attachment, Injunctive Relief, and Expedited Discovery, p. 8, No. 15-cv-3096, ECF No. 32). There is nothing in Plaintiff's Complaint to suggest the Court's finding should be revisited.

**B.      Allegations of future conduct do not support a claim for fraud.**

A "statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities ... ordinarily does not constitute an actionable misrepresentation." *Razdan*, 979 F. Supp. at 759, *quoting Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir. 1993). However, where a false promise of future conduct "is the scheme or device to accomplish the fraud," such a promise can be actionable as fraud. *Razdan*, 979 F. Supp. at 759, *quoting Bower v. Jones,* 978 F.2d 1004, 1011 (7th Cir. 1992). But this type of claim can only survive the pleading stage if the plaintiff "point[s] to specific, objective manifestations of fraudulent intent … If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed." *Razdan*, 979 F. Supp. at 759, quoting *Bower*, 978 F.2d at 1012. The Complaint comes nowhere close to meeting this requirement.

**III.    The Claims for Conversion and Breach of Fiduciary Duty Are Barred by the *Moorman* Doctrine.**

The *Moorman* doctrine prevents recovery for most tort claims when the damages are purely economic. *See Moorman Mfg. Co. v. Nat'l Tank Co.,* 435 N.E.2d 443, 453, 91 Ill.2d 69, 61 Ill.Dec. 746 (Ill.1982); *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.,* 679 N.E.2d 1197, 1199, 176 Ill.2d 160, 223 Ill.Dec. 424 (Ill.1997). The three generally recognized exceptions to this rule are: (1) where the plaintiff has sustained damage resulting from a sudden or dangerous occurrence; (2)

where the plaintiff's damages are the proximate result of a defendant's intentional, false representation (fraud); and (3) where the plaintiff's damages are a proximate result of a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Ill. Bell Switching Station Litig.,* 641 N.E.2d 440, 443–444, 161 Ill.2d 233 (1994) (internal citations omitted). The Illinois Supreme Court has also recognized that "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.,* 636 N.E.2d 503, 514, 159 Ill.2d 137, 164 (1994). "These exceptions have in common the existence of an extra-contractual duty between the parties, giving rise to a cause of action in tort separate from one based on the contract itself." *Catalan v. GMAC Mortg. Corp.,* 629 F.3d 676, 693 (7th Cir.2011). Thus, to determine whether the *Moorman* doctrine bars a claim in tort, "the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 567 (7th Cir. 2012).

Here, there are no facts in the Complaint to plausibly suggest any of the recognized exceptions to the *Moorman* doctrine apply. The loss did not arise out of a sudden or dangerous situation and E-MedRx is not in the business of supplying information for the guidance of others. Nor did it make any fraudulent or negligent misrepresentations. Although Plaintiff seeks recovery based on theories of conversion and breach of fiduciary duty, the duties at issue in those claims arise solely from the Agreement and nothing else. Parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover damages caused by a breach of contract. *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 327 Ill. App. 3d 346, 351, 763 N.E.2d 428, 434 (2002), *citing East River Steamship Corp. v. Transamerica Delaval, Inc.,*

476 U.S. 858, 871–874 (1986).  And the *Moorman* limitation on tort recovery "holds true regardless of the plaintiff's inability to recover under an action in contract." *Mars*, 763 N.E.2d at 434.

**IV.    The Breach of Fiduciary Duty Claim in Count IV Fails.**

Plaintiff's breach of fiduciary duty claim fails because Plaintiff's allegations do not establish the existence of a fiduciary relationship.  A special fiduciary relationship may exist under Illinois law where "one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 210 F. Supp. 3d 1022, 1038 (S.D. Ill. 2016), *quoting Ill. State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468, 480–81 (1ˢᵗ Dist. 2012). The existence of such a "special" relationship must be pled with sufficient particularity to establish the placement of trust and the creation of a hierarchical relationship. *Id.*  Those are not the allegations here, where the hierarchical relationship between Plaintiff and E-MedRx is clearly pled as a master-servant relationship.  (ECF No. 13, ¶¶9-17).

Additionally, both the Northern District of Illinois and Southern District of Illinois have found that a contractual business relationship does not give rise to a fiduciary relationship, and mere allegations of trust between sophisticated business parties are insufficient to create a fiduciary relationship between the parties. *See 3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 941–42 (N.D. Ill. 2000); *see also Cmty. Bank of Trenton*, 210 F. Supp. 3d at 1038. Plaintiff and E-MedRx are clearly sophisticated parties to an arm's length transaction in a common industry.  The fact that Plaintiff trusted E-MedRx to perform functions as required under the Agreement does not create a fiduciary relationship between the parties.  *3Com*, 104 F. Supp. 2d at 941; see also *VW Credit, Inc. v. Friedman & Wexler, LLC*, 2010 WL 2330364, at *3 (N.D. Ill.

June 7, 2010) (allegations that one business trusted another to perform contractual obligations not enough to allege a fiduciary relationship).

## V.     The Conversion Claim in Count V Fails.

To establish a claim for conversion under Illinois law, a plaintiff must allege facts showing the defendant's wrongful and unauthorized assumption of control or ownership over the property in question.  *Wendorf v. Landers*, 755 F. Supp. 2d 972, 980–81 (N.D. Ill. 2010).  Here, the only facts in the Complaint establish that E-MedRx failed to remit money owed to Plaintiff pursuant to a contract.  A party cannot bring a conversion claim to satisfy a mere obligation to pay money. *VW Credit, Inc. v. Friedman & Wexler, LLC*, 2010 WL 2330364, at *3 (N.D. Ill. June 7, 2010).

## VI.    The Accounting Claim in Count VI Fails.

In order to state a claim for an accounting under Illinois law, a "plaintiff must allege the absence of an adequate remedy at law and either a breach of fiduciary relationship, a need for discovery, fraud, or the existence of mutual accounts" that are complex in nature.  *3Com Corp.,* 104 F.Supp.2d at 941. "There is one exception to this rule: Illinois courts will excuse a plaintiff's failure to allege the absence of an adequate remedy at law if the accounting claim is based on a breach of fiduciary duty."  *Id.*  The Complaint does not contain the facts necessary to establish any of these elements.  As set forth above, the fraud and breach of fiduciary duty claims are unsupported and therefore fail.  The only loss at issue is a loosely defined amount of money owed pursuant to a contract.  There is simply no basis whatsoever for an accounting.

## VII.   The RICO Claim in Count VII Fails.

To establish a RICO violation, the plaintiff must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985). The congressional purpose of the civil RICO statute was to prohibit organized crime from infiltrating interstate commerce. S. Rep. No. 91-617, at 76 (1969) (stating

that RICO's purpose was "the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce"). RICO does ***not*** apply to business disputes. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) (explaining that "RICO has not federalized every state common-law cause of action available to remedy business deals gone sour") (emphasis added). Here, Plaintiff fails to establish the existence of two predicate crimes that satisfy the "continuity plus relationship" test.

### A. Plaintiff fails to allege a pattern of racketeering activity.

"A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period." *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir. 1994). Additionally, a civil RICO plaintiff must allege two predicate acts that satisfy the "continuity plus relationship" test. *Midwest Grinding Co.*, 976 F.2d at 1022. "Satisfying the pattern element is no easy feat and its precise requirements have bedeviled courts." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019) (citation omitted) (emphasizing that "courts carefully scrutinize the pattern requirement). A plaintiff alleging predicate acts of wire fraud must do so with particularity and specificity under Rule 9(b). *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001). "Moreover, because a RICO plaintiff must allege two predicate acts of fraud, [it] must satisfy the requirements of Rule 9(b) twice." *Slaney*, 244 F.3d at 599; see also *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013) (holding "a single alleged scheme targeted at one victim is not a 'pattern of racketeering activity,' even if the alleged scheme required several acts of mail and wire fraud to inflict the injury.")

Plaintiff's predicate acts are based on the allegations in the AAYH and Empire Lawsuits. However, as set forth above, neither of those lawsuits are sufficient to establish a pattern of fraud, and Plaintiff fails to plead any additional facts to support its RICO claim. Indeed, the central

dispute here – whether E-MedRx failed to remit payments pursuant to the Agreement – cannot support a RICO claim, because Congress did not intend for RICO to apply to business disputes. *Midwest Grinding*, 976 F.2d at 1025. The Complaint is devoid of any facts to plausibly suggest an otherwise actionable RICO claim. And, "[w]ithout an adequate detail description of the predicate acts of mail and wire, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established." *Jepson, Inc.*, 34 F.3d 1321 (7ᵗʰ Cir. 1994) at 1328 (citation omitted).

### B. Plaintiff fails to allege that the predicate crimes are continuous.

The "continuity plus relationship" test requires the plaintiff to allege the predicate acts are related to one another and that they pose a threat of continued criminal activity. *Midwest Grinding*, 976 F.2d at 1022. Continuity is either a "closed- or open-ended concept." *Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois*, 424 F.3d 659, 672 (7th Cir. 2005) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). A plaintiff can satisfy either concept by: "(1) demonstrating a close-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future." *Id.* (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1023 (7th Cir. 1992)).

Here, the Plaintiff fails to establish open or closed-ended continuity for the same reasons it cannot establish the existence of predicate acts: the two prior lawsuits it relies on are dissimilar. The AAYH Lawsuit did not involve allegations of wire fraud, as this Court previously noted with the E-MedRx's and Drennan's willingness to cooperate for an early and quick resolution of the AAYH Lawsuit cuts against the threat of future fraudulent activity. And the allegations from the Empire Lawsuit fail because they were adjudicated in favor of E-MedRx.

**VIII.    There Is No Basis For Individual Or Shareholder Liability Of Drennan.**

There are no facts in the Complaint to establish a basis for personal or shareholder liability of Drennan.  "Personal liability for actions taken on behalf of the corporation attaches only when the officer or director is alleged to have taken part in the wrongful act initially giving rise to the corporation's liability." *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill. App. 3d 366, 372, 808 N.E.2d 606, 611 (4th Dist. 2004).  Therefore, Plaintiff's tort counts pled against Drennan (fraud, breach of fiduciary duty and conversion) also fail.  "So long as a corporation remains solvent, its directors ... owe no duties or obligations to others." *Technic Eng'g, Ltd. v. Basic Envirotech, Inc.*, 53 F. Supp. 2d 1007, 1010–11 (N.D. Ill. 1999), quoting *Beach v. Miller*, 130 Ill. 162, 170, 22 N.E. 464, 466 (1889). While fraud can be an exemption to that rule, it can only apply where a corporate debtor has become insolvent and there is a subsequent fraudulent transfer of corporate assets to avoid the creditor. *Technic*, 53 F. Supp. 2d at 1011. That is not the case, nor has it been alleged, here.

**IX.    The Prayers for damages beyond the contractual limitation should be stricken.**

Although Empire seeks relief including treble, exemplary and punitive damages in nearly all of its Counts, Paragraph 2(m) of Agreement specifically bars those damages.  (ECF No. 13-1, ¶2m).  Accordingly, the Court should strike all such prayers for relief in excess of what is permitted to be recovered by the parties.

<u>CONCLUSION</u>

For the reasons set forth above and, in their motion, Defendants E-MEDRX SOLUTIONS, INC., and DEBBIE DRENNAN respectfully request that the Court grant their Motion to Dismiss and enter an Order dismissing the Amended Complaint with prejudice, and for such further and additional relief this Court deems just and appropriate.

Respectfully submitted,

E-MEDRX SOLUTIONS, INC., and
DEBBIE DRENNAN


/s/ Patrick R. Moran
One of their attorneys

Patrick R. Moran
James B. Novy
Michael C Stephenson
ROCK FUSCO & CONNELLY, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000 – Tel.
312.494.1001 – Fax
pmoran@rfclaw.com
jnovy@rfclaw.com
mstephenson@rfclaw.com