E-FILED
Thursday, 23 January, 2020  04:43:13 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| MOBIMEDS, INC. D/B/A THE PILL CLUB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. No. 3:19-cv-3224 |
| | ) | (CSB) (TSH) |
| E-MEDRX SOLUTIONS, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

Todd Mizeski, NJ Reg. No. 025122001 – Lead Counsel
(Admitted Pro Hac Vice to CD of IL)
Steven L. Bennet, NJ Reg. No. 028562009
(Admitted to Pro Hac Vice CD of IL)
FRIER & LEVITT, LLC
84 Bloomfield Avenue
Pine Brook, N.J. 07058
Tel. (973) 618-1660
Fax. (973) 618-0650
tmizeski@frierlevitt.com
sbennet@frierlevitt.com

David A. Herman, IL Reg. No. 6211060 – Local Counsel
Matthew R. Trapp, IL Reg. No. 6284154
GIFFIN, WINNING, COHEN & BODEWES, P.C.
1 West Old State Capitol Plaza, Suite 600
Springfield, IL 62701
Tel. (217) 525-1571
Fax. (217) 525-1750
dherman@giffinwinning.com
mtrapp@giffinwinning.com

Counsel for Plaintiff

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 1

Background ...................................................................................................................... 1

Drennan Begins Pattern of Fraud .................................................................................. 2

The Pill Club Seeks Resolution Short of Lawsuit ........................................................ 3

E-MedRx Terminates the Agreement Without Notice ................................................. 4

Drennan's Fraud has Damaged Plaintiff ....................................................................... 4

STANDARD OF REVIEW ............................................................................................... 5

ARGUMENT ..................................................................................................................... 5

I.    PLAINTIFF ADEQUATELY PLEADED BREACH OF CONTRACT IN COUNT II BECAUSE IT ALLEGED THE AGREEMENT WAS TERMINATED BY DEFENDANTS . 5

II.    PLAINTIFF HAS PLED FRAUD WITH PARTICULARITY ..................................... 7

III.    PLAINTIFF'S CLAIMS FOR CONVERSION AND BREACH OF FIDUCIARY DUTY ARE PROPERLY PLED AND NOT SUBJECT TO THE MOORMAN DOCTRINE BECAUSE DEFENDANTS MADE FRAUDULENT OR NEGLIGENT MISREPRESENTATIONS AND BECAUSE BREACH OF FIDUCIARY DUTY IS NOT A TORT IN ILLINOIS ................................................................................................. 12

A. Breach of Fiduciary Duty ................................................................................. 12

B. Conversion ........................................................................................................ 13

IV.    PLAINTIFF PROPERLY PLEADED BREACH OF FIDUCIARY DUTY BECAUSE THE GRANT OF A POWER OF ATTORNEY CREATES A FIDUCIARY RELATIONSHIP 15

V.    PLAINTIFF PROPERLY STATED A CLAIM FOR CONVERSION BECAUSE DEFENDANTS EXERCISED WRONGFUL AND UNAUTHORIZED CONTROL OVER PLAINTIFF'S MONEY ........................................................................................... 17

VI.    PLAINTIFF HAS PROPERLY STATED A CLAIM FOR ACCOUNTING BECAUSE IT HAS PLED THE ABSENCE OF AN ADEQUATE REMEDY AT LAW, A BREACH OF FIDUCIARY DUTY, FRAUD, AND THE NEED FOR DISCOVERY ................................ 19

VII.    PLAINTIFF HAS PROPERLY PLEADED ITS RICO CLAIM BECAUSE IT ALLEGED DEFENDANTS' CONDUCT OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY .......................................................................... 19

VIII.    PLAINTIFF HAS MET THE NOTICE PLEADING STANDARD NECESSARY TO PLEAD VEIL PIERCING ...................................................................................... 22

IX.    PLAINTIFF HAS PROPERLY SOUGHT PUNITIVE AND EXEMPLARY DAMAGES ARISING FROM DEFENDANTS' TORT AND STATUTORY CLAIMS ....... 24

X.      PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND IF ANY CLAIMS ARE
        DISMISSED ........................................................................................................................... 26

CONCLUSION............................................................................................................................. 27

# **TABLE OF AUTHORITIES**

## CASES

2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd., 555 N.E.2d
    346 (1990) .................................................................................................................. 14

3Com Corp. v. Elecs. Recovery Specialists, Inc., 104 F. Supp. 2d 932 (N.D. Ill. 2000) ............. 17

Ameritech Corp. v. McCann, 297 F.3d 582 (7th Cir. 2002) ........................................................ 7

Apple v. Apple, 95 N.E.2d 334 (Ill. 1950) ................................................................................. 16

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................................ 5, 10

Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677 (7th Cir.1992) ................................... 9

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................................ 5

Boucher v. Fin. Sys. of Green Bay, Inc., 880 F.3d 362 (7th Cir. 2018) ......................................... 5

Boyce v. Fernandes, 77 F.3d 946 (7th Cir. 1996) ....................................................................... 16

Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732 (7th Cir. 2014) ................................... 8, 12

Cirrincione v. Johnson, 703 N.E.2d 67 (1998) ......................................................................... 14

City of Rockford v. Mallinckrodt ARD, Inc., 360 F. Supp. 3d 730 (N.D. Ill.
    2019), reconsideration denied, 17 C 50107, 2019 WL 2763181 (N.D. Ill. May 3, 2019).......... 8

Colin Hann, Carol Gallagher v. Paul Revere Life Ins. Co., 2004 WL 557380 (N.D. Ill. Feb. 17,
    2004) ...................................................................................................................... 23

Collins v. Reynard, 607 N.E.2d 1185 (Ill. 1992) ....................................................................... 25

Connick v. Suzuki Motor Co., 675 N.E.2d 584 (Ill. 1996) ........................................................... 8

CustomGuide v. CareerBuilder, LLC, 813 F. Supp. 2d 990 (N.D. Ill. 2011) .............................. 19

DeGuelle v. Camilli, 664 F.3d 192 (7th Cir. 2011) ................................................................... 20

Doe v. Home Military School, 227 F.3d 981 (7th Cir.2000) ....................................................... 26

Drobny v. JP Morgan Chase Bank, NA, 929 F. Supp. 2d 839 (N.D. Ill. 2013) .......................... 21

Dubey v. Pub. Storage, Inc., 918 N.E.2d 265 (Ill. App. Ct. 2009) ............................................... 8

Dugas-Filippi v. JP Morgan Chase, N.A., 66 F. Supp. 3d 1079  (N.D. Ill. 2014) ....................... 18

Envision Healthcare, Inc. v. Fed. Deposit Ins. Corp., 2014 WL 6819991 (N.D. Ill. Dec. 3, 2014)6

H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229 (1989) .............................................................. 20, 21

Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923, 1929, 195 L. Ed. 2d 278 (2016) ............ 25

Hoffman v. Sumner, 478 F. Supp. 1024 (N.D. Ill. 2007) ........................................................... 26

Illinois Constr. Corp. v. Morency & Assocs., Inc., 802 F.Supp. 185 (N.D.Ill.1992) ................... 13

In re Consol. Indus., 360 F.3d 712 (7th Cir.2004) ....................................................... 10

In re Edgewater Med. Ctr., 344 B.R. 864 (Bankr. N.D. Ill. 2006) ................................ 13

In re Estate of Rybolt, 631 N.E.2d 792 (Ill. 1994) ........................................................ 16

In re Ill. Bell Switching Station Litig., 641 N.E.2d 440 (Ill. 1994) .............................. 13

In re Rockefeller Center Props., Inc. Sec. Litig., 311 F.3d 198 (3d Cir. 2002) .............................. 9

IOS Capital, Inc. v. Phoenix Printing, Inc., 808 N.E.2d 606 (Ill. App. Ct. 2004) ........... 22, 23, 24

Kellers Systems, Inc. v. Transport Intern. Pool, Inc., 172 F.Supp.2d 992 (N.D.Ill.2001)........... 23

Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys., 428 F.3d 706 (7th Cir.2005) .. 19

Kinzer on Behalf of City of Chicago v. City of Chicago, 539 N.E.2d 1216 (Ill. 1989) .............. 12

Landfield Finance Co. v. Regal Paper Box Co., 104 N.E.2d 359 (1952) .................................... 22

Lansing v. Carroll, 2012 WL 4759241 (N.D. Ill. Oct. 5, 2012) ......................................... 13, 14

Lawlor v. N. Am. Corp. of Illinois, 983 N.E.2d 414 (Ill. 2012) .............................................. 12, 16

Lemp v. Hauptmann, 525 N.E.2d 203 (Ill. App. Ct. 1988) ........................................... 16

Loman v. Freeman, 890 N.E.2d 446 (2008) ....................................................... 14, 17

Mannion v. Stallings & Co., 561 N.E.2d 1134 (1990) ................................................... 22

Market Street Associates Limited Partnership v. Frey, 941 F.2d 588 (7th Cir.1991) ................. 16

Menzies v. Seyfarth Shaw LLP, 197 F. Supp. 3d 1076 (N.D. Ill. 2016) ............................... 21, 22

Menzies v. Seyfarth Shaw LLP, 943 F.3d 328 (7th Cir. 2019) ......................................... 20

Moorman Manufacturing Co. v. Nat'l Tank Co., 435 N.E.2d 443 (Ill. 1982) ....................... 12, 15

Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir.1986).......................................... 22

Nat'l Acceptance Co. of Am. v. Pintura Corp., 418 N.E.2d 1114 (Ill. App. Ct. 1981) ............... 23

Newton v. Aitken, 633 N.E.2d 213 (Ill. App. Ct. 1994)..................................................... 8

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436 (7th Cir. 2011) ....................................................................................... 9, 10, 11

Pohl v. Nat'l Benefits Consultants, Inc., 956 F.2d 126 (7th Cir. 1992) ............................ 16

Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater, 668 N.E.2d 1129 (Ill. App. Ct. 1996) ..... 18

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) .................................................... 20

Smolinski v. Oppenheimer, 11 C 7005, 2012 WL 2885175 (N.D. Ill. July 11, 2012) ................ 10

St. Paul Fire & Marine Ins. Co. v. Great Lakes Turnings, Ltd., 774 F.Supp. 485 (N.D.Ill.1991) 13

Tilghman v. Proctor, 125 U.S. 136 (1888) ........................................................ 25

Tobey v. Chibucos, 890 F.3d 634 (7th Cir. 2018) .................................................. 5,6

UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C., 289 F. Supp. 3d 852 (N.D. Ill. 2018)
.................................................................................................................................... 23

United States v. Sullivan, 2016 WL 1626622 (N.D. Ill. Apr. 21, 2016) ..................................... 23

Vanco US, LLC v. Brink's, Inc., 2010 WL 5365373 (N.D.Ill.Dec.14, 2010) ............................. 14

Wendorf v. Landers, 755 F. Supp. 2d 972 (N.D. Ill. 2010)................................................... 18

Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012)................................................ 12

## STATUTES

18 U.S.C. § 1961(5) .................................................................................................................. 20

Fed. R. Civ. P. 12(b)(6)............................................................................................................... 5

Fed. R. Civ. P. 9(b) ..................................................................................................................... 8

## RULES

Rule 12(b) (6)............................................................................................................................ 10

Rule 9(b) ................................................................................................................................... 11

## INTRODUCTION

This case arises from Defendants' breach of contract and fraud stemming from Defendant Debbie Drennan's ("Drennan") lies and excuses surrounding the actions and inactions of the Pharmacy Services Administration Organization ("PSAO") known as E-MedRx Solutions, Inc. ("E-MedRx") for which she serves as principal, in its dealings with Plaintiff Mobimeds, Inc. d/b/a The Pill Club ("The Pill Club"). Drennan engaged in a brazen pattern of fraud and conversion through which she not only breached E-MedRx's contract with The Pill Club, but also misled The Pill Club into remaining in contract with E-MedRx and causing it to suffer further damage. The Pill Club has met the relevant pleading standard and, therefore, Defendants' motion to dismiss should be denied.

## STATEMENT OF FACTS

**Background**

The Pill Club is a retail pharmacy organized and existing under the laws of California. First Amended Complaint, ECF No. 13 at ¶3. E-MedRx is a Pharmacy Services Administration Organization ("PSAO") located in Illinois, and Drennan is its president and CEO. Id. at ¶¶4-5. As a PSAO, E-MedRx contracts with independent pharmacies, including The Pill Club, in order to enroll those pharmacies into multiple networks with Pharmacy Benefits Managers ("PBMs"), which are the primary payors for pharmacy benefits, so that the pharmacies may receive reimbursement for patients in those networks, and E-MedRx collects such payments on behalf of the pharmacies. Id. at ¶¶11-14. As part of these services, E-MedRx must submit an Explanation of Benefits ("EOB") to The Pill Club along with such payments, so that Plaintiff may determine which claims E-MedRx has paid. Id. at ¶15.

1

On or about April 25, 2018, The Pill Club entered into an Agreement with E-MedRx (the "Agreement"), through which E-MedRx agreed, among other services, to "handling all processing issues" related to pharmaceutical services for The Pill Club. Id. at ¶¶16-17; see also ECF No. 13-1 (hereinafter, the "Agreement"). Almost immediately, E-MedRx failed to provide EOBs and to pay monies it owed The Pill Club under the Agreement.

**Drennan Begins Pattern of Fraud**

On or about September 17, 2018, The Pill Club emailed Drennan, seeking EOBs and payment remittances that were due to it pursuant to the Agreement. ECF No. 13 at ¶21. The Pill Club made over twenty more attempts via email and calls between September 17 and September 26 to acquire EOBs, though Drennan did not answer Plaintiff's calls, voicemails or emails. Id. at ¶22. On September 28, 2018, Drennan finally responded, stating, "On training call right now, funds and EOBs going out today." No such materials were delivered and no further response was forthcoming. Id. at ¶23.

On October 3, 2018, Drennan changed her "IT issues" story, stating she was "traveling" and "forgot" to enter a "code" which would ostensibly have resolved the payment issues. Id. at ¶26. On October 8, 2018, Drennan responded to multiple calls with an email stating, "Payment went out Friday working on EOB's now." Id. at ¶27. In fact and, proving false Drennan's statement that the "Payment went out," The Pill Club never received any payment from Drennan until October 29, 2018, when Drennan sent only partial EOBs and a fraction of the amounts E-MedRx owed to The Pill Club on that date. Id. at ¶29.

Indeed, Drennan has never provided The Pill Club with all EOBs or full payments E-MedRx owes to The Pill Club; rather, Drennan has offered a litany of lies and excuses, like those recalled above, in an attempt to defer The Pill Club from seeking to collect payment or to otherwise

2

prevent The Pill Club from receiving the monies E-MedRx owes under the Agreement. See, e.g., id. at ¶30. One of these lies was offered through email on February 17, 2019, wherein Drennan stated, among other things, "…e-Med was a victim of a hack. FBI have been working very hard but they say it's not likely to recoup money. I have not listed you guys yet as the FBI have shut down 3 pharmacies already. They will have to come and go through all your computers and stuff." Ibid. However, as Defendants allude to in their brief, the only "hack" against E-MedRx occurred at some time in or around April 2018. See ECF No. 15 at 4; see also ECF No. 13-1 at 40. E-MedRx and The Pill Club did not enter into the Agreement until April 25, 2018. ECF No. 13 at ¶16.

### The Pill Club Seeks Resolution Short of Lawsuit

On March 8, 2019, The Pill Club sent a letter to E-MedRx demanding it come into compliance with the Agreement and threatening to terminate the Agreement should E-MedRx fail to cure it multiple material breaches of the Agreement to the satisfaction of The Pill Club.  Id. at ¶32; ECF No. 13-1 at 9. In response, E-MedRx submitted two payments totaling $275,000. ECF No. 13 at ¶33.

In the interim, and having grown suspicious of Drennan's unprofessional and dishonest behavior, The Pill Club performed research into the past practices of E-MedRx and Debbie Drennan. Id. at ¶34. That research revealed two cases in which the Defendants were accused of similar behavior as in the immediate matter. Ibid. Indeed, these public filings revealed that the "hack" Drennan used as an excuse for her inability to satisfy the Agreement arose at some time at or before the parties even entered into the Agreement. ECF No. 13-1 at 40.

The Pill Club did not, in fact, terminate the Agreement, but on August 12, 2019 it issued another letter to Drennan, demanding no less than $2.5 million in satisfaction of the outstanding debt E-MedRx owed to The Pill Club. Id. at ¶35; ECF No. 13-1 at 61. On or about August 15,

2019, in response to requests from Plaintiff, Drennan stated she would produce all outstanding EOBs and proof of payment to Plaintiff for all outstanding claims. ECF No. 13 at ¶26. Drennan produced some documents; however, those documents did not substantiate payment of outstanding balances, nor did they establish a complete or even basic record of the parties' transaction history. Ibid.

**E-MedRx Terminates the Agreement Without Notice**

While The Pill Club continued to process claims through E-MedRx during the aforementioned times, suddenly, on or after September 17, 2019 and without notice, E-MedRx terminated the Agreement. Id. at 37. Having no prior knowledge regarding if or when E-MedRx would terminate The Pill Club, The Pill Club was unable to secure a new PSAO in time to avoid interruption of their services; however, The Pill Club still filled claims for patients at its own expense. Id. at 38.

**Drennan's Fraud has Damaged Plaintiff**

In addition to the foregoing, Drennan has sent multiple emails and other communications to The Pill Club's agents stating that E-MedRx was the victim of a "hack" through which E-MedRx lost funds allegedly belonging to The Pill Club; that there was an ongoing FBI investigation into such hack; and that she was in constant contact with an FBI agent named "Brian" regarding the alleged hack. Id. at 39. To date, neither Drennan nor E-MedRx has produced evidence of such a hack or informed The Pill Club of any amounts by which The Pill Club may have been damaged as a result thereof. Ibid.

The damage in this case has arisen from Drennan's fraudulent statements regarding a "hack," and her various other statements made over email and by other verbal and electronic means. Id. at ¶39. The Pill Club relied upon these statements, continuing to do business with

4

Defendants, thus suffering damages in an amount for which it has been unable to fully account, due to Defendants' failure to remit EOBs. Id. at ¶¶66-67, 88.

## STANDARD OF REVIEW

In order to prevent dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Boucher v. Fin. Sys. of Green Bay, Inc., 880 F.3d 362, 366 (7th Cir. 2018) (quoting Iqbal, 556 U.S. at 678). When applying this standard, a Court is to accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party. Tobey v. Chibucos, 890 F.3d 634, 646 (7th Cir. 2018).

## ARGUMENT

I.  **PLAINTIFF ADEQUATELY PLEADED BREACH OF CONTRACT IN COUNT II BECAUSE IT ALLEGED THE AGREEMENT WAS TERMINATED BY DEFENDANTS**

Plaintiff alleged that Defendant terminated the Agreement on or about September 17, 2019, thereby causing damages as set forth in Count II of the First Amended Complaint. See ECF No. 13 at ¶36. Plaintiff never alleged that the Agreement was terminated before that time and, regardless of any communications Plaintiff sent to Defendants that could possibly be read as threatening termination, Plaintiff has never alleged that it did, in fact, terminate the parties' Agreement. Defendants' attempt to adopt any other reading of such communications may give rise to a question of fact, but such is not ripe for determination as this stage of litigation. Accordingly, the Court should deny Defendants' motion as to Count II.

Defendants adequately state in their brief the elements of a breach of contract in Illinois: To prove a breach of contract in Illinois, the plaintiff must show the existence of "a valid contract, performance by the plaintiff, breach by the defendant, and damages." Def. Br. at 5 (quoting Envision Healthcare, Inc. v. Fed. Deposit Ins. Corp., 2014 WL 6819991, at *4 (N.D. Ill. Dec. 3, 2014)).

Plaintiff alleged, in Count II of its First Amended Complaint, that the parties entered into a contract governed by the Agreement, which set forth the respective rights and obligations of the parties; that Plaintiff performed in accordance with the material terms of the contract, that the contract provided certain express terms regarding termination, including that the "Agreement **may** be terminated by a party if the other party commits a material breach of this Agreement and if such breach is not cured within sixty (30) days after written notice of the breach from the non-breaching party"; and that Defendants breached this term, as they gave Plaintiff no notice of the termination, causing it damage. ECF No. 13 at ¶¶ 51-61 (emphasis added). Thus, Plaintiff has alleged a breach of contract under Illinois law.

Defendants argue that Plaintiff has pled itself out of court through its letters to Defendants, which Plaintiff attached as Exhibits A and D of its complaint. Defendants' argument must fail, however, because they seek an inference in Defendants' favor, rather than in Plaintiff's, and the Court must "draw all reasonable inferences in favor of the non-moving party" in this motion. Chibucos, 890 F.3d at 646.

Defendants argue that because Plaintiff included the statement, "Failure to cure the material breaches to the satisfaction of the Pharmacy within the next thirty calendar days, or by April 7, 2019, shall result in immediate termination, effective April 8, 2019," in its March 8, 2019 letter

(ECF No. 13-1 at 9) and noted in its August 12, 2019 letter that such material breaches had not been cured, id. at 62, the Agreement was therefore terminated as of April 8, 2019.

Defendants' argument is deficient as it demands the Court infer that because Plaintiff *threatened* termination of the contract, it did in fact terminate the contract. In fact, The Pill Club continued to do business with Defendants, as evident through its August 12, 2019 letter. Moreover, the fact—as pled in the First Amended Complaint—that Defendants terminated the Agreement without notice on or about September 17, 2019, gives rise to the inference that it was Defendants, and not Plaintiff, that terminated the contract.

Even if the Court finds that Plaintiff's March 8, 2019 letter gives rise to Defendants position, this allegation is a question of fact and may not be resolved upon this motion. Ameritech Corp. v. McCann, 297 F.3d 582, 588–89 (7th Cir. 2002) (stating a question of material fact cannot be determined upon a motion to dismiss). Accordingly, Defendant's motion to dismiss Count II of the First Amended Complaint must be denied.

## II.   PLAINTIFF HAS PLED FRAUD WITH PARTICULARITY

Plaintiff has adequately pled fraud in its claims for common law fraud and for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") because Plaintiff identified specific, false statements Drennan made, upon which it relied, and which caused it damages. Defendants build a straw man with certain portions of Plaintiff's complaint and ignore those instances of blatant fraud upon which Plaintiff has based its claims. Because Plaintiff has adequately pleaded fraud with particularity, Defendants' motion as to Counts III and VIII should be denied.

"Under Illinois law, the elements of common law fraud are: '(1) a false statement of a material fact; (2) knowledge or belief of falsity by the party making it; (3) intention to induce the

other party to act or refrain from acting; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.'" City of Rockford v. Mallinckrodt ARD, Inc., 360 F. Supp. 3d 730, 776 (N.D. Ill. 2019), reconsideration denied, 17 C 50107, 2019 WL 2763181 (N.D. Ill. May 3, 2019) (quoting Newton v. Aitken, 633 N.E.2d 213, 216 (Ill. App. Ct. 1994)). "A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." Connick v. Suzuki Motor Co., 675 N.E.2d 584, 591 (Ill. 1996).

Separately, an ICFDBPA plaintiff must allege that "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." Dubey v. Pub. Storage, Inc., 918 N.E.2d 265, 277 (Ill. App. Ct. 2009).

Both the common law fraud claim and the ICFDBPA claim require a plaintiff to plead fraud with particularity. Connick v. Suzuki Motor Co., 675 N.E.2d 584, 593 (Ill. 1996) ("[A] complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud."). Such a standard is also required under Fed. R. Civ. P. 9(b), and under that standard, "[p]laintiffs are required to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 737 (7th Cir. 2014) (internal quotations omitted).

8

In this case, Plaintiff has met all the elements necessary to plead fraud with particularity for both the common law fraud and ICFDBPA claims. By example and without limitation, Plaintiff in its First Amended Complaint identified Drennan as the person making the misrepresentations. ECF No. 13 at ¶63. It identified the time of the misrepresentation as January 17, 2019, and the content as,

> Alec so sorry for not getting back between my granddaughter and e-Med was a victim of a hack. FBI have been working very hard but they say it's not likely to recoup money. I have not listed you guys yet as the FBI have shut down 3 pharmacies already. They will have to come and go through all your computers and stuff. It's been a nightmare. I'm to the point where the stress is not worth this! I'll try to call you tomorrow.
>
> [Ibid.]

It identified the method of communication as having been through "emails and other communications." Id. at ¶39. None of these allegations were made "upon information and belief" but were direct assertions of fact.

As Defendants state in their brief, "[t]he general rule that fraud cannot be pled based on information and belief is not ironclad, however: the practice is permissible, so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436, 443 (7th Cir. 2011) (internal quotations omitted). The Pirelli Court further elaborated, stating, "The grounds for the plaintiff's suspicions must make the allegations plausible, even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." Ibid. (citing In re Rockefeller Center Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) and Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir.1992)) (emphasis

in original). When determining whether any given claim is "plausible," a court should draw on "judicial experience and common sense." Iqbal, 556 U.S. 662, 679.

Furthermore, although Plaintiff did not rest its fraud claims upon the prior litigation it referenced in its complaint, and although those claims stand independently of the prior litigation, that prior litigation is evidence of the "careful pretrial investigation" Plaintiff undertook before bringing these claims. Pirelli, 631 F.3d at 441. The Pirelli Court recognized it could be "appropriate to accord limited corroborative weight to allegations in another's lawsuit." Id. at 443. In that case, the court found it would not be appropriate to accord allegations contained in another lawsuit based upon the Pirelli plaintiff's inability to point to any "meaningful indication that the plaintiff had been injured." Id. at 444. That is, the Pirelli plaintiff sought to base its entire complaint upon allegations in a lawsuit which were also based "upon information and belief," and the court found that such could be afforded little, if any weight. Ibid.

In the immediate case, and to the contrary, Plaintiff's injuries are not speculative or based upon the other lawsuits referenced in it First Amended Complaint. Rather, Plaintiff suffered damages in excess of $2.5 million. To that point, Defendants' attempt to cast Plaintiff's claimed damages as speculative is beside the point, as "a motion to dismiss deals with allegations, not findings, and plausibility, not proof." Smolinski v. Oppenheimer, 11 C 7005, 2012 WL 2885175, at *4 (N.D. Ill. July 11, 2012) (emphasis in original) (citing In re Consol. Indus., 360 F.3d 712, 717 (7th Cir.2004) for the quote, "Of course, a judge reviewing a motion to dismiss under Rule 12(b) (6) cannot engage in fact-finding."). Even delving briefly into the facts, Plaintiff's March 8, 2019 demand letter had different goals than those sought through this litigation. Setting that aside, Plaintiff will present evidence at trial that it is entitled to damages and a jury will decide the amount, based upon the evidence.

As to the sufficiency of the former litigation to support any allegations made solely "upon information and belief," the Court may give "limited corroborative weight" to such former litigation. <u>Pirelli</u>, 631 F.3d at 441. The fact that an alleged "hack" formed the basis of one of the prior complaints, and the fact that Defendants admit such a hack occurred at some point *before* the parties entered into their arrangement, is not merely meant to demonstrate that Defendants committed fraud against some other party; rather, it demonstrates that Drennan attempted to use the fact of that fraud—which had no effect on her business relationship with The Pill Club—to prevent The Pill Club from collecting the monies owed to it and to steal or convert those monies to her own and/or E-MedRx's use. Paired with Defendants' admission the hack occurred, the Court may give some weight to the corroborative effect of the prior litigation.

Finally, with respect to Defendants' argument that "allegations of future conduct do not support a claim for fraud," Defendants fail to identify which statements are "allegations of future conduct." Def. Br. at 9. Plaintiff has alleged that Defendants made false statements regarding the "hack" and the effect the alleged "hack" had upon Plaintiff's interests under the Agreement. Plaintiff has also alleged that Defendants made multiple false statements of fact to avoid submitting EOBs and payments. These are not allegations relating to future events, they are allegations that Defendants lied in order to cover up either malfeasance or gross negligence in handling Plaintiff's business. In either respect, Plaintiff has not alleged any promise of future action on the part of Defendants nor, indeed, do Defendants, as they have failed to identify which statements might qualify under this analysis.

Given the particularity with which Plaintiff has pled its complaint, including "the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff," Plaintiff has properly pled fraud with particularity under Rule 9(b).

<u>Camasta</u>, 761 F.3d at 737. Accordingly, in light of the foregoing, Plaintiff has adequately alleged fraud sufficient to sustain both Count III and Count VIII of the complaint. Therefore, the Court should deny Defendants' motion.

**III.   PLAINTIFF'S CLAIMS FOR CONVERSION AND BREACH OF FIDUCIARY DUTY ARE PROPERLY PLED AND NOT SUBJECT TO THE MOORMAN DOCTRINE BECAUSE DEFENDANTS MADE FRAUDULENT OR NEGLIGENT MISREPRESENTATIONS AND BECAUSE BREACH OF FIDUCIARY DUTY IS NOT A TORT IN ILLINOIS**

Plaintiff's Count IV for Breach of Fiduciary Duty and Count V for Conversion are properly pled, as they meet the elements of those claims. Moreover, the <u>Moorman</u> Doctrine does not apply to allow dismissal of the claims because Plaintiff alleged that Defendants had made fraudulent or negligent statements. Therefore, Defendants' motion as to counts IV and V should be denied.

**A.   Breach of Fiduciary Duty**

"To state a claim for breach of fiduciary duty, it must be alleged and ultimately proved: (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." <u>Lawlor v. N. Am. Corp. of Illinois</u>, 983 N.E.2d 414, 433 (Ill. 2012). Although the Restatement (Second) of Torts professed the view that such a claim qualifies as a tort, § 874 (1976), the Illinois Supreme Court disagrees with this view, and "has regarded breach of fiduciary duty as controlled by the substantive laws of agency, contract and equity." <u>Kinzer on Behalf of City of Chicago v. City of Chicago</u>, 539 N.E.2d 1216, 1220 (Ill. 1989).

The <u>Moorman</u> doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." <u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547, 567 (7th Cir. 2012) (citing <u>Moorman Manufacturing Co. v. Nat'l Tank Co.</u>, 435 N.E.2d 443, 448–49 (Ill. 1982). There are three generally recognized exceptions to this rule, including "(1) where the

plaintiff has sustained damage resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are the proximate result of a defendant's intentional, false representation (fraud); and (3) where the plaintiff's damages are a proximate result of a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." Lansing v. Carroll, 11 C 4153, 2012 WL 4759241, at *2 (N.D. Ill. Oct. 5, 2012) (citing In re Ill. Bell Switching Station Litig., 641 N.E.2d 440, 443–444 (Ill. 1994)) (internal citations omitted).

However, given the Illinois Supreme Court's view that breach of fiduciary duty is not a tort, federal courts applying Illinois law have rejected attempts to apply Moorman to such claims. See, e.g., In re Edgewater Med. Ctr., 344 B.R. 864, 870 (Bankr. N.D. Ill. 2006) (citing St. Paul Fire & Marine Ins. Co. v. Great Lakes Turnings, Ltd., 774 F.Supp. 485, 488 (N.D.Ill.1991) (fiduciary duty claims not barred by Moorman doctrine), and Illinois Constr. Corp. v. Morency & Assocs., Inc., 802 F.Supp. 185, 188 (N.D.Ill.1992) (Moorman doctrine inapplicable to claims based on agency and contract theory)).

Plaintiff has properly stated a claim for breach of fiduciary duty, because it (1) alleged that a fiduciary duty existed between it and E-MedRx; (2) alleged that E-MedRx breached that duty; and (3) the breach was the proximate cause of more than $2.5 million damages to Plaintiff. As found by multiple federal courts applying Illinois law, Moorman does not apply to this claim. Accordingly, Defendants' motion should be denied as to this claim.

### B. Conversion

Plaintiff has also properly stated a claim for Conversion and, although Conversion is a tort in Illinois, this claim falls under an exception of the Moorman doctrine. Accordingly, Defendants' motion should be denied as to this claim as well.

13

"To prove conversion, a plaintiff must establish that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." Loman v. Freeman, 890 N.E.2d 446 (2008) (quoting Cirrincione v. Johnson, 703 N.E.2d 67 (1998)). As discussed, above, the Moorman doctrine shall not apply to the tort of conversion, or any other tort, "where the plaintiff's damages are the proximate result of a defendant's intentional, false representation (fraud)." Lansing v. Carroll, 2012 WL 4759241, at *2.

Importantly, federal courts applying Moorman to conversion claims have raised doubt as to its applicability to such claims. For instance, in Vanco US, LLC v. Brink's, Inc., 2010 WL 5365373, at *6 (N.D.Ill.Dec.14, 2010), the court found a conversion claim could proceed where "Plaintiff's alleged pocketing of Defendant's money meant to pay Defendant's [internet service providers] is not the type of 'economic loss' contemplated by the doctrine." While Plaintiff's claim should survive under the "fraud" exception, it nevertheless also survives under the Vanco standard.

In Vanco, the Defendant, Brinks, alleged multiple counter claims against the Plaintiff, Vanco, including one count of conversion, based upon the fact that Brinks had paid money to Vanco that Vanco was obligated to pay to an internet service provider (ISP), but instead "pocketed" the money. 2010 WL 5365373, at *6. The court cited the Illinois Supreme Court for the principle that "the [Moorman] doctrine is intended to prevent the scope of tort law from encroaching on disputes that are best resolved under the principles of contract." Ibid. (citing 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd., 555 N.E.2d 346 (1990)). The court then found that allegations of Vanco "pocketing" Brink's money was not the type of "economic loss" contemplated and, therefore, that the claim should not be dismissed.

14

In this case, Defendants "pocketed" money that was intended to be remitted to Plaintiff. This is not a case in which a breach of contract by Defendants caused "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits. . . ." Moorman, 435 N.E.2d 443 (1982). This is a case in which Defendants possessed money specifically earmarked for Plaintiff and lied to Plaintiff in order to keep that money These are not contract damages; rather, they are damages arising from Defendants affirmatively taking possession of money belonging to Plaintiff. Thus, under both the "fraud" exception to the Moorman doctrine and under the Vanco standard, Plaintiff has stated a claim for conversion.

The Moorman doctrine does not apply to Plaintiff's claim for breach of fiduciary duty because it is wholly inapplicable to such claims under Illinois law. It is not applicable to Plaintiff's conversion claim because that claim falls under the fraud exception to the doctrine and because the damages alleged are not the type of "economic losses" contemplated under Moorman. Accordingly, this Court should deny Defendant's motion as to Counts IV and V.


IV.    **PLAINTIFF PROPERLY PLEADED BREACH OF FIDUCIARY DUTY BECAUSE THE GRANT OF A POWER OF ATTORNEY CREATES A FIDUCIARY RELATIONSHIP**

Plaintiff has adequately alleged a fiduciary relationship between The Pill Club and E-MedRx, as Illinois has long recognized that a power of attorney gives rise to a general fiduciary relationship. Plaintiff alleged in Count IV that the parties' Agreement expressly granted E-MedRx a power of attorney. Accordingly, under Illinois law, E-MedRx was a fiduciary to Plaintiff, and Plaintiff therefore properly pled breach of fiduciary duty. Defendants' motion should hence be denied as to Count IV.

"A fiduciary is an agent who is required to treat his principal with utmost loyalty and care—treat him, indeed, as if the principal were himself." Pohl v. Nat'l Benefits Consultants, Inc., 956 F.2d 126, 128–29 (7th Cir. 1992) (citing Market Street Associates Limited Partnership v. Frey, 941 F.2d 588, 593 (7th Cir.1991)). As stated above, "To state a claim for breach of fiduciary duty, it must be alleged and ultimately proved: (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." Lawlor, 983 N.E.2d at 433. In Illinois," a power of attorney gives rise to a general fiduciary relationship between the grantor of the power and the grantee as a matter of law." Lemp v. Hauptmann, 525 N.E.2d 203, 205 (Ill. App. Ct. 1988) (citing Apple v. Apple, 95 N.E.2d 334, 338 (Ill. 1950)); see also Boyce v. Fernandes, 77 F.3d 946, 950 (7th Cir. 1996) ("[A] power [of attorney] creates a fiduciary relation . . . and thus an opportunity for abuse by the power holder that is at best tortious and at worst criminal.") (citing In re Estate of Rybolt, 631 N.E.2d 792, 795 (Ill. 1994)).

Plaintiff alleged in Count IV that the parties incorporated into the Agreement an executed document entitled "Limited Power of Attorney," which gave E-MedRx the power to act in various ways on behalf of E-MedRx. ECF No. 13 at ¶71. By agreeing to the power of attorney, under Illinois law, E-MedRx became a fiduciary to The Pill Club. Lemp, 525 N.E.2d at 205. As a fiduciary, E-MedRx was required to "treat [its] principal with utmost loyalty and care—treat [it], indeed, as if the principal were [it]self." Pohl, 956 F.2d at 128–29. Plaintiff has alleged E-MedRx breached its duty by failing to properly process payments on behalf of Plaintiff, thus failing to treat The Pill Club with utmost loyalty and care. ECF No. 13 at ¶73-75. Plaintiff has alleged E-MedRx's breach caused it damages. Id. at 76. Thus, The Pill Club has properly alleged a cause of action for breach of fiduciary duty.

The cases Defendants cite in support of their motion to dismiss do not address the "power of attorney" issue; rather, Defendants merely ignore the above case law and Plaintiff's substantive allegations that the parties executed a power of attorney. Defendants cite to <u>3Com Corp. v. Elecs. Recovery Specialists, Inc.</u>, 104 F. Supp. 2d 932, 941–42 (N.D. Ill. 2000) for the proposition that "mere allegations that one business simply trusted another to fulfill his contractual obligations is certainly not enough" to establish a fiduciary relationship, but such is not the allegation in Plaintiff's First Amended Complaint. The allegation is that the executed power of attorney establishes a fiduciary relationship as a matter of law, and Defendants fail to address this allegation. Accordingly, Defendants' motion should be denied as to Count IV.

## V.   PLAINTIFF PROPERLY STATED A CLAIM FOR CONVERSION BECAUSE DEFENDANTS EXERCISED WRONGFUL AND UNAUTHORIZED CONTROL OVER PLAINTIFF'S MONEY

Plaintiff has properly stated a claim for conversion because it has alleged facts which establish Defendants' wrongful and unauthorized control over the monies in question. Contrary to Defendants' characterization, the allegation is more than a mere failure to pay according to a contract; rather, Plaintiff has alleged that Defendants took into possession monies rightfully belonging to Plaintiff and converted those monies to their own use. Accordingly, Defendants' motion should fail.

Once again, "To prove conversion, a plaintiff must establish that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." <u>Loman</u>, 890 N.E.2d at 461. In cases involving a plaintiff's allegation that a defendant "wrongfully exerted control over a specific amount of money," where "the courts found a specific sum sufficiently identifiable to

support a conversion action," a conversion claim is proper. <u>Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater</u>, 668 N.E.2d 1129, 1135 (Ill. App. Ct. 1996); <u>see also</u>, <u>Wendorf v. Landers</u>, 755 F. Supp. 2d 972, 981 (N.D. Ill. 2010) ("When money is at issue, an action for conversion may be maintained where the converted funds are capable of being described, identified, or segregated in a specific manner.").

In this case, Plaintiff has alleged that Defendants have wrongfully exerted their control over an amount of money that is identifiable and specific.[1] Defendants have taken possession of payments from PBMs that were owed to Plaintiff, and instead of remitting those payments to Plaintiff, Defendants converted the payments to their own ownership. Plaintiff had an unconditional right to the monies because they were payments from a PBM to Plaintiff for the services Plaintiff rendered. As soon as the PBM provided those monies to Defendants, Defendants had an obligation to turn those monies over to Plaintiff, and Plaintiff had an absolute and unconditional right to those monies. Contrary to Defendants' assertion, these are not generalized contractual obligations; rather they are specific, identifiable sums that Defendants over which Defendants exerted their control and converted to their own use. Accordingly, Defendants' motion as to Count V must be denied.

Furthermore, even though Plaintiff has stated a claim for conversion, it would be premature to dismiss such a claim as a matter of law before deciding on the merits of Plaintiff's breach of contract claim. <u>See</u> <u>Dugas-Filippi v. JP Morgan Chase, N.A.</u>, 66 F. Supp. 3d 1079, 1093 n.19 (N.D. Ill. 2014) (noting disposition of conversion claim as a matter of law not proper without knowing validity of accompanying contract claim). For this reason as well, the motion should be denied.

---

[1] The exact amounts of money will be identified in discovery, where Plaintiff will be seeking EOBs from Defendants.

VI.     **PLAINTIFF HAS PROPERLY STATED A CLAIM FOR ACCOUNTING BECAUSE IT HAS PLED THE ABSENCE OF AN ADEQUATE REMEDY AT LAW, A BREACH OF FIDUCIARY DUTY, FRAUD, AND THE NEED FOR DISCOVERY**

Plaintiff has properly pled a claim for accounting, because it has pleaded it is without an adequate remedy at law and it has pleaded all other prerequisites necessary to maintain a claim for accounting. Therefore, Defendants' motion as to Count VI should be denied.

"To state a claim for the equitable relief of an accounting, a plaintiff must allege the absence of an adequate remedy at law." CustomGuide v. CareerBuilder, LLC, 813 F. Supp. 2d 990, 1003 (N.D. Ill. 2011) (citing Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys., 428 F.3d 706, 715 (7th Cir.2005)). Additionally, a "plaintiff must allege at least one of the following: (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." Ibid.

Here, Plaintiff has alleged a lack of an adequate remedy at law. ECF No. 13 at ¶91. As set forth more fully above, Plaintiff has also pleaded fraud and breach of fiduciary duty. Plaintiff also pleaded, "[a]bsent an accounting, Plaintiff may be deprived of the ability to redress the wrongs perpetrated against it by Defendants," and thus has adequately pled its need for discovery. Id. at ¶90. In support of their motion, Defendants argue merely that Plaintiff has not adequately pled fraud or breach of fiduciary duty and, for the reasons more fully set forth above, Defendants are wrong. Accordingly, the court should deny Defendants' motion as to Count VI.

VII.    **PLAINTIFF HAS PROPERLY PLEADED ITS RICO CLAIM BECAUSE IT ALLEGED DEFENDANTS' CONDUCT OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY**

Plaintiff properly pleaded Count VI, asserting claims pursuant to the Racketeering Influenced And Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964, because it alleged Defendants conducted an enterprise through a pattern of racketeering activity, properly alleging

19

that Defendants' actions with prior clients and with Plaintiff demonstrated schemes to acquire clients' money through acts of wire fraud. Defendants have not demonstrated any insufficiency in the pleading, and therefore the motion should be denied as to Count VI.

"Establishing a RICO violation requires proof by a preponderance of the evidence of '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Menzies v. Seyfarth Shaw LLP, 943 F.3d 328, 336 (7th Cir. 2019) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496–97 (1985)). A "pattern of Racketeering activity" requires "at least two acts of racketeering activity" within a ten-year period. Ibid. (citing 18 U.S.C. § 1961(5)). Thus, properly pleading a "pattern of racketeering activity" requires that "'a plaintiff [] demonstrate a relationship between the predicate acts as well as a threat of continuing activity'"—a standard known as the "continuity plus relationship" test. Ibid. (citing DeGuelle v. Camilli, 664 F.3d 192, 199 (7th Cir. 2011)). The Supreme Court has "made plain that the relationship prong is satisfied by acts of criminal conduct close in time and character, undertaken for similar purposes, or involving the same or similar victims, participants, or means of commission." Ibid. (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989)).

> To answer the "pattern" prong, the following six-question process is employed:
>
> The first two questions are:
>
> 1. Are the acts in a series (at least two) related to one another, for example, are they part of a single scheme?
> 2. If not, are they related to an external organizing principle, for example, to the affairs of the enterprise?
> . . . .
> RICO's pattern element can be shown with either a "horizontal" relationship between the predicate acts themselves or a "vertical" relationship of the predicate acts to the RICO enterprise itself. If both of the above questions are answered in the negative, no relationship is present and this Court need not proceed further.

If either question is answered "yes," however, relationship is present and the following additional questions must be asked:

3. Are the acts in the series open-ended, that is, do the acts have no obvious termination point?
4. If not, did the acts in the closed-ended series go on for a substantial period of time, that is, more than a few weeks or months?

Generally, if either question is answered in the affirmative, continuity is present.
If both questions are answered in the negative, however, up to two additional questions must be asked:

5. May a threat of continuity be inferred from the character of the illegal enterprise?
6. If not, may a threat of continuity be inferred because the acts represent the regular way of doing business of a lawful enterprise?

If either question is answered in the affirmative, a threat of continuity is present.

[Menzies v. Seyfarth Shaw LLP, 197 F. Supp. 3d 1076, 1096 (N.D. Ill. 2016) (citing, among other cases, H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989)).]

In this case, Plaintiff has alleged more than two acts of wire fraud made by Defendants with the intention of inflicting different injuries upon Plaintiff at different times, thus satisfying Question 1, above. Drennan committed wire fraud by emailing Plaintiff on numerous occasions, as described in the First Amended Complaint, with various lies aimed at preventing Plaintiff from inquiring into Defendants' fraudulent business practices. These instances of Defendant's wire fraud include, but are not limited to Drennan's statement on September 17, 2018, that E-MedRx had IT issues and needed a technician to access EOBs. ECF No. 13 at ¶21, as well as Drennan's separate email of February 17, 2019, stating "e-Med was a victim of a hack" and that the FBI was being consulted in response to that alleged hack. These fraudulent wire communications were not made in conjunction with "a single alleged scheme," Drobny v. JP Morgan Chase Bank, NA, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013), but rather were "separate schemes and … distinct injuries"

against Plaintiff. <u>Morgan v. Bank of Waukegan</u>, 804 F.2d 970, 975 (7th Cir.1986). However, even if they were the same scheme, "'the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement' because the pattern requirement is 'a standard, not a rule.'" <u>Menzies</u>, 197 F. Supp. 3d 1097 (quoting <u>Morgan</u>, 804 F.2d 975-76). Given the fact that the acts of fraud in question have no termination point—that is, they were meant to perpetuate Defendants' ability to steal from Plaintiff until the Agreement was finally terminated—Question 3, above, is also a "yes," thus establishing Defendants' liability under RICO.

Plaintiff has thus alleged Defendants engaged in a pattern of racketeering activity. Defendants' attempt to recharacterize Plaintiff's pleadings as depending upon other parties' allegations against Defendants falls flat in the face of Plaintiff's properly alleged complaint demonstrating multiple acts of wire fraud to accomplish multiple instances of fraud against Plaintiff. Accordingly, Defendants' motion as to Count VII should be denied.

## VIII.  PLAINTIFF HAS MET THE NOTICE PLEADING STANDARD NECESSARY TO PLEAD VEIL PIERCING

Plaintiff has sought relief in the form of piercing the corporate veil as against Debbie Drennan to hold Drennan personally liable for her actions on behalf of E-MedRx and has properly pleaded entitlement to such relief under the liberal pleading standard therefor. Accordingly, Defendants' motion should be denied as to this theory of liability.

"Corporate officers are generally not liable for corporate obligations." <u>IOS Capital, Inc. v. Phoenix Printing, Inc.</u>, 808 N.E.2d 606, 611 (Ill. App. Ct. 2004) (citing <u>Mannion v. Stallings & Co.</u>, 561 N.E.2d 1134, 1141 (1990)). However, they "are liable for any tort of the corporation in which they participate." <u>Ibid.</u> (quoting <u>Landfield Finance Co. v. Regal Paper Box Co.</u>, 104 N.E.2d 359 (1952)). "[A] corporate officer's individual liability for conversion committed by him

personally in behalf of the corporation is established in the same manner as his liability for any other tort; by proof of active participation in the conversion." Nat'l Acceptance Co. of Am. v. Pintura Corp., 418 N.E.2d 1114, 1117 (Ill. App. Ct. 1981). As Defendants state in their motion, "Personal liability for actions taken on behalf of the corporation attaches only when the officer or director is alleged to have taken part in the wrongful act initially giving rise to the corporation's liability." IOS Capital, Inc., 808 N.E.2d 606, 611 (Ill. App. Ct. 2004).

"[T]o state an alter ego theory, 'plaintiffs typically are only required to satisfy the notice pleading standards of Rule 8(a).'" UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C., 289 F. Supp. 3d 852, 859 (N.D. Ill. 2018) (quoting United States v. Sullivan, 2016 WL 1626622, at *10 (N.D. Ill. Apr. 21, 2016)). Indeed, "[w]here a claimant fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied." Ibid. "Accordingly, if a plaintiff alleges that a parent is the alter ego of its subsidiary, dismissal of her complaint is unwarranted if she alleges any facts which suggest that the corporations operated as a single entity." Colin Hann, Carol Gallagher v. Paul Revere Life Ins. Co., 2004 WL 557380, at *2 (N.D. Ill. Feb. 17, 2004) (citing Kellers Systems, Inc. v. Transport Intern. Pool, Inc., 172 F.Supp.2d 992, 1001 (N.D.Ill.2001)).

In this case, Plaintiff has alleged that Drennan's behavior in asserting her own personal problems and circumstances "in an attempt to defer the responsibilities of the corporation demonstrate such unity of interest and ownership in E-MedRx that the separate personalities of the corporation and Drennan no longer exist, and that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice upon Plaintiff." ECF No. 13 at ¶41. This alone suffices to meet the notice pleading requirement for piercing the corporate veil.

Additionally, Plaintiff has pleaded fraud, conversion, RICO, and violation of the Consumer Fraud and Deceptive Business Practices Act ("CFDBPA") against Drennan in her personal capacity. These claims are predicated upon acts initiated by Drennan in the first instance, on behalf of E-MedRx. Thus, Plaintiff has properly alleged Drennan's personal liability under <u>IOS Capital, Inc.</u>, 808 N.E.2d at 611, which demands only that Plaintiff plead Drennan took part in the wrongful act giving rise to corporate liability. In the case of conversion, Drennan is alleged to have lied on behalf of the corporation in order to misappropriate the monies owed from the PBMs to Plaintiff. With respect to the fraud counts, which include the RICO and CFDBPA counts, Drennan was the sole actor for E-MedRx alleged to have committed the fraud and, thus, the only actor capable of the act giving rise to corporate liability. Accordingly, Plaintiff has properly pleaded veil piercing. Defendants' motion should be dismissed as to this question.

## IX. PLAINTIFF HAS PROPERLY SOUGHT PUNITIVE AND EXEMPLARY DAMAGES ARISING FROM DEFENDANTS' TORT AND STATUTORY CLAIMS

Plaintiff seeks various forms of equitable, punitive, and other exemplary damages arising from Defendants' tort and statutory liability. The parties' Agreement limits such remedies only in the event of "breach of this Agreement"; that is, only for contract damages, and not from tort or statutory claims. Plaintiff has not sought such damages for any breach of the Agreement; therefore, Defendants' motion should be dismissed as to relief.

The parties' Agreement provides, at Section 2(m):

> Except for a breach of the confidentiality section of this Agreement, each of NETWORK and PHARMACY agree to limit their liability to the other **for any breach of this Agreement** to actual and/or direct damages and, accordingly, in no event shall NETWORK or PHARMACY be liable to the other for any consequential, exemplary, punitive, special, or indirect damages, and each is hereby excluded by a agreement of the parties, regardless of whether

> or not NETWORK or PHARMACY has been advised of the
> possibility of such damages.

[Emphasis added.]

Plaintiff has complied with this contractual agreement and, for both breach of contract counts,

refrained from seeking any relief proscribed by Agreement. However, the Agreement by its terms

is limited to a "breach of this Agreement," and does not encompass the tort claims alleged against

Defendants.

As expressed by the Supreme Court of Illinois,

> Contract law applies to voluntary obligations freely entered into
> between parties. Damages recoverable under a breach of contract
> theory are based upon the mutual expectations of the parties. The
> basic principle for the measurement of contract damages is that the
> injured party is entitled to recover an amount that will put him in as
> good a position as he would have been in had the contract been
> performed as agreed.
>
> Tort law, on the other hand, applies in situations where society
> recognizes a duty to exist wholly apart from any contractual
> undertaking. Tort obligations are general obligations that impose
> liability when a person negligently, carelessly or purposely causes
> injury to others. These obligations have been recognized by society
> to protect fellow citizens from unreasonable risks of harm.

[Collins v. Reynard, 607 N.E.2d 1185, 1186 (Ill. 1992).]

Regarding awards of punitive and other exemplary damages, the Supreme Court has

described these as "vindictive or punitive," which the court may "inflict" when "the circumstances

of the case appear to require it." Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923, 1929, 195

L. Ed. 2d 278 (2016) (quoting Tilghman v. Proctor, 125 U.S. 136, 143–144 (1888)). With respect

to exemplary damages in RICO claims, "the purpose of civil RICO is not only to redress individual

wrongs, but also wrongs on the public; and the purpose of civil RICO's treble damages is to

motivate individuals to vindicate the public good by bringing a private suit." <u>Hoffman v. Sumner</u>, 478 F. Supp. 2d 1024, 1031 (N.D. Ill. 2007).

In this case and, according to the above principles, the relief sought by Plaintiff as to the tort and statutory claims are not "rooted in disappointed contractual or commercial expectations," <u>Id.</u> at 1188 (Miller, J., concurring), which would subject them to the <u>Moorman</u> Doctrine. Instead, Plaintiff seeks punitive and treble damages against Defendants as vindication for Defendants' willful and wanton conduct against Plaintiff and to deter future conduct. Defendants are alleged to have committed a massive fraud and conversion against Plaintiff and, if not deterred, will likely do so again against an innocent party. Defendants' liabilities arise not only from a failure of their obligations under the Agreement, but from wholly separate and egregious conduct that injured Plaintiff and endangers the public as a whole. Plaintiff therefore must be permitted to vindicate the public good by pursuing exemplary damages, aside from the obvious fact that the parties' Agreement does not prevent exemplary damages for claims in tort. Accordingly, Defendants' motion should be denied as to damages.

## X.  PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND IF ANY CLAIMS ARE DISMISSED

Although Plaintiff's First Amended Complaint is sufficiently pled in its entirety, should the court strike any portion of the First Amended Complaint Plaintiff asks that such relief should be granted without prejudice, and leave granted to amend the complaint. Leave to amend is a liberal standard which should be freely given when justice requires. <u>Doe v. Home Military School</u>, 227 F.3d 981, 989 (7th Cir.2000).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint should be denied.

Respectfully Submitted,

*/s/ Steven Bennet*

Steven L. Bennet, Esq.
FRIER & LEVITT, LLC
84 Bloomfield Avenue
Pine Brook, New Jersey 07058
Tel. (973) 618-1660
Fax. (973) 618-0650
sbennet@frierlevitt.com