IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MOBIMEDS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:19-cv-3224 (CSB) (TSH) |
| | ) |
| E-MEDRX SOLUTIONS, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

James B. Novy
Patrick R. Moran
ROCK FUSCO & CONNELLY, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000 – Tel.
312.494.1001 – Fax
jnovy@rfclaw.com
pmoran@rfclaw.com
***Attorneys for Defendants E-MedRx, Inc. and Debbie Drennan***

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………..1

ARGUMENT…………………………………………………………………………………...1

    I.      Plaintiff's Breach of Contract Claim Should Be Dismissed………………………..1

    II.     The Amended Complaint Does Not Meet Rule 9's Heightened Pleading Requirement……………………………………………………………………….2

    III.    The Conversion Claim is Barred by the *Moorman* Doctrine………………………4

    IV.    The Conversion Claim Fails……………………………………………………….5

    V.     The Breach of Fiduciary Duty Claim Fails………………………………………...6

    VI.    The Accounting Claim Fails……………………………………………………….8

    VII.   The RICO Claim Fails……………………………………………………………..8

    VIII.  The Individual Claims Against Drennan Fail……………………………………..10

    IX.    Plaintiff's Claims for Treble, Exemplary, and Punitive Damages Should Be Stricken……………………………………………………………………………..12

CONCLUSION………………………………………………………………………………..12

# TABLE OF AUTHORITIES

*Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999)……………………..3

*Boyle v. United States*, 129 S.Ct. 2237 (2009)……………………………………………….....9

*Braman v. Woodfield Gardens Assoc., Realcorp Investors I*,

    715 F.Supp. 226 (N.D. Ill. 1989)…………………………………………………………..5

C.D. Ill. L.R. 7.1……………………………………………………………………………………11

*Centers v. Centennial Mortg., Inc.*, 398 F.3d 930 (7th Cir. 2005)………………………………...2

*Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392 (7th Cir. 2009)……………………………….....9

*CustomGuide v. CareerBuilder, LLC*, 813 F.Supp.2d 990 (N.D. Ill. 2011)……………………….8

Fed. R. Civ. P. 9(b)………………………………………………………………………………...3, 4

*Guaranteed Rate, Inc. v. Barr*, 912 F.Supp.2d 671 (N.D. Ill. 2012)………………………………9

*IOS Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill.App.3d 366 (4th Dist. 2004)……………..…11

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382 (7th Cir. 2010)………………9

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,

    529 F.3d 371 (7th Cir. 2008)……………………………………………………………...10

*Kelly v. Health Benefits Pain Mgmt. Servs., LLC*,

    No. 13 C 4539, 2014 WL 714025 (N.D. Ill. Feb. 24, 2014)……...…………………...9, 10

*Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.*,

    428 F.3d 706 (7th Cir. 2005)………………………………………....………………….8

*Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602 (7th Cir. 2009)………………………..11

*Lansing v. Carroll*, 2012 WL 4759241 (N.D. Ill. Oct. 5, 2012)…………………………..……...5

*Mann v. Kemper Financial Companies, Inc.*, 247 Ill.App.3d 966 (1st Dist. 1992)…………..…..8

*Martinek v. Diaz*, 2012 WL 2953183 (N.D. Ill. July 18, 2012)…………………………………..9

*Massey v. Merrill Lynch & Co.*, 464 F.3d 642 (7th Cir. 2006)…………………………………….1

*Merry Gentleman, LLC v. George and Leona Productions, Inc.*,

    76 F.Supp.3d 756 (N.D. Ill. 2014)…………………………………………………………..12

*Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (1982)……………………………………..5, 6

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*,

    631 F.3d 436 (7th Cir. 2011)…………………………………………………………....3

Restatement (Third) of Agency § 1.01 (2006)……………………………………………………..8

*Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir. 1995)………………………….....9

*Schlessinger v. Chicago Hous. Auth.*, No. 12 C 3733, 2013 WL 2434704
      (N.D. Ill. June 3, 2013)………………...……………………………………….…5, 6

*Schultz v. Arrow Fin. Servs., LLC*, 465 F.Supp.2d 872 (N.D. Ill. 2006)………………….……7

*St. George Investments, LLC v. QuamTel, Inc.*,
      2014 WL 812517 (N.D. Ill. March 3, 2014)………………………………………….5

*Tartt v. Northwest Comm. Hosp.*, 453 F.3d 817 (7th Cir. 2006)………………………….…….4

*Trustees of the Chicago Reg'l Council of Carpenters Pension Fund v. Joyce Bros. Storage &
      Van Co.*, No. 15 C 1584, 2016 WL 910504 (N.D. Ill. Mar. 10, 2016)……………..…..11

*Valenti v. Qualex, Inc.*, 970 F.2d 363 (7th Cir. 1992)……………………………………….…7

*Vanco US, LLC v. Brink's, Inc.*, 2010 WL 5365373 (N.D. Ill. Dec. 14, 2010)……………….....5

**INTRODUCTION**

Plaintiff believes its Complaint alleges enough facts to state plausible claims in Counts II through VIII; however, even with the advantage of an oversized brief, Plaintiff is either unwilling or unable to identify those facts. Instead, Plaintiff relies on a distortion of the pleading standards in this circuit in an effort to salvage a largely defective Complaint. The Court need not relax well-settled pleading requirements or accept every implausible, unreasonable inference Plaintiff proposes. Rather, for the reasons stated below and in Defendants' memo of law, all but Count I of the Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.    Plaintiff's Breach of Contract Claim Should Be Dismissed.**

Plaintiff seems to think any and all inferences must be drawn in its favor, no matter how inconsistent or unreasonable those inferences may be. Not only is Plaintiff wrong – the Court is only required to draw *reasonable* inferences – but when it comes to Court II, no inferences are required to make a decision because the party responsible for terminating the Solutions Participation Agreement (the "Agreement") is spelled out in black and white, in the letters attached as Exhibits B and D to the Complaint. Although Plaintiff wants to hold E-MedRx liable for unlawfully terminating the Agreement, those letters, which Plaintiff's counsel wrote and sent to E-MedRx, show without a doubt that it was Plaintiff, and not E-MedRx or Drennan, who terminated the Agreement. (*See* ECF No. 13, Ex. B and Ex. D). Those exhibits control to the extent they are inconsistent with the plaintiff's allegations. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). As a result, Plaintiff has pleaded itself out of Court on Count II. *Id*. ("a plaintiff 'may plead himself out of court by attaching documents to the complaint that

indicate that he or she is not entitled to judgment'") (quoting *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)).

Plaintiff cannot change these facts by ignoring them. Nor can Plaintiff salvage the claim by suggesting a follow-up demand letter sent three months after Plaintiff terminated the contract is evidence of an "ongoing" business relationship. That contention is likewise inconsistent with Exhibits B and D and implausible. In the second letter, Plaintiff: (1) noted the alleged breach still had not been cured three months later and (2) inexplicably demanded more money. There is nothing in the letter to suggest Plaintiff had not terminated the contract. In any event, if Plaintiff is looking for an inference, only one is reasonable: Plaintiff terminated the Agreement. The "Notice of Termination" Plaintiff sent to E-MedRx unequivocally and unambiguously states the Agreement *shall* be terminated immediately effective April 8, 2019 unless E-MedRx met a list of demand, and the word "termination" was repeated an additional four (4) times within the communication. (ECF No. 13, Ex. B). On August 12, 2019, Plaintiff expressly reaffirmed the termination of the Agreement ("On March 8, 2019, by way of letter, this firm informed E-MedRx that it … would terminate the Agreement"). (ECF No. 13, Ex. D, p. 2). Further, the second letter said nothing whatsoever about retracting the notice of termination set forth in the first letter. It referred instead to its intent to pursue legal remedies under the Agreement, a statement that is not at all inconsistent with termination of the contract. *Id*. at p. 5. For these reasons, Count II of the Complaint should be dismissed with prejudice.

## II.     The Amended Complaint Does Not Meet Rule 9's Heightened Pleading Requirement.

Plaintiff's fraud claims are likewise devoid of the minimum factual threshold required under Rule 9 to state plausible claims. Instead, Plaintiff tries to shift the focus away from its pleading failures with irrelevant and misleading arguments. Plaintiff starts by referring to a

statement Drennan allegedly made *after* the fraud and losses had occurred related to a computer hack at issue in *Empire Specialty Pharmacy Corp. v. E-MedRx Solutions, Inc., et al.*, 3:18-cv-3118 (SEM) (TSH) (the "Empire Lawsuit"). (ECF No. 18, p. 11). Not only does Plaintiff fail to identify any facts to show the falsity of the statement, but the pleadings in the Empire Lawsuit actually demonstrate those statements are true.[1] Moreover, even assuming the statement was completely false, Plaintiff does not and cannot show the statement caused to do anything different or that Plaintiff reasonably relied it or that the statement caused any loss. In other words, the statement and others like it in the Complaint only serve to confirm Plaintiff is fishing for a way to turn a garden-variety contract dispute into a fraud claim. The purpose of the heightened pleading requirement in fraud cases is prevent that exact type of pleading strategy. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 445 (7th Cir. 2011) (the purpose of Rule 9 is to "forc[e] the plaintiff to do more than the usual investigation before filing his complaint") *quoting Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999)).

Plaintiff then argues it should be allowed to support the fraud claims with allegations made "on information and belief," based on the existence of the other two lawsuits once filed against E-MedRx, the Empire Lawsuit and *All About Your Health, Inc. v. E-MedRx Solutions, Inc., et al.*, No. 15-cv-3096 (the "AAYH Lawsuit"). But those lawsuits come nowhere close to establishing a basis for Plaintiff to support its fraud claims "on information and belief," which is why Plaintiff ends the paragraph with a promise to "present evidence at trial." (ECF No. 18, p. 10). That kind of empty promise undermines the purpose of Rule 9. Plaintiff cannot get to a trial without having

---

[1] In fact, the first name in the example, Alec, is the same as the first name of the attorney of record for the plaintiff in the Empire Lawsuit. Thus, it appears Drennan had mistakenly sent a message meant for that party to Plaintiff in this case. Nonetheless, the allegations and docket in the Empire Lawsuit squarely align with the information in the statement Plaintiff relies on as its example and undermine any claim that the statement was materially false.

the predicate facts to bring the claim in the first place.

Moreover, Plaintiff does not bother to address the reasons both lawsuits cannot be used to prop up the fraud claims, as set forth in Defendants' Memo of Law. Plaintiff simply ignores those arguments and blithely plows ahead with respect to the Empire Lawsuit, attempting to use the "hack" allegation to prop up the fraud claims. But Plaintiff cannot use fraud allegations from a lawsuit that was resolved in favor of E-MedRx to support a fraud claim against E-MedRx. *See Tartt v. Northwest Comm. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006) (citations omitted). More importantly, under Plaintiff's theory the statements are not even framed as "material misrepresentations" made to induce action by Plaintiff or reliance. Rather, the point of the statements, according to Plaintiff, is to prevent Plaintiff from collecting money that was already lost and to cover up malfeasance or gross negligence. (ECF No. 18, p. 11). Covering up or explaining away malfeasance is not the same as making a misrepresentation of material fact to induce action or reliance. Plaintiff is simply trying to fit a square peg (a contract dispute) into a round hole (the fraud claims), and it is not working.

### III.   The Conversion Claim is Barred by the *Moorman* Doctrine.

Plaintiff argues its tort claims are not barred by the *Moorman* doctrine, but the exceptions it tries to invoke simply do not apply.[2] First, as set forth above, Plaintiff cannot rely on the fraud exception to the *Moorman* doctrine because Plaintiff's fraud claims are defective. Second, Plaintiff does not even try to argue its tort claims fall into the other exceptions to the *Moorman* doctrine, and for good reason. They do not. There is no allegation that Plaintiff's conversion damages were caused by a sudden, dangerous occurrence, and Plaintiff does not allege that E-

---

[2] Plaintiff is correct that its breach of fiduciary duty claim is not viewed as a tort under Illinois law and therefore is not subject to the *Moorman* doctrine. That claim is still defective for other reasons set forth herein.

MedRx is in the business of supplying information for the guidance of others. Thus, the conversion claim cannot survive.

Plaintiff nonetheless argues its particular conversion claim is not barred by the *Moorman* doctrine, citing *Vanco US, LLC v. Brink's, Inc.*, 2010 WL 5365373 (N.D. Ill. Dec. 14, 2010), but that case is inapposite and regarded as a minority view in the Northern District of Illinois. As set forth in *St. George Investments, LLC v. QuamTel, Inc.*, 2014 WL 812517, *9 (N.D. Ill. March 3, 2014), *Vanco* is inapposite because the decision was rooted in fraud and deceptive business practices, which the *Vanco* court concluded "is not the type of 'economic loss' contemplated by the doctrine." *Id.* citing *Vanco*, 2010 WL 5365373, *6. As set forth above, Plaintiff's fraud allegations are insufficient and cannot carry the day. Moreover, *St. George* and two other cases in the Northern District have concluded that the *Moorman* doctrine bars conversion claims. *Id.* citing *Lansing v. Carroll*, 2012 WL 4759241, at *3 (N.D. Ill. Oct. 5, 2012) (barring conversion claim where plaintiff sought "recovery for harm to a contract-like interest"); *Braman v. Woodfield Gardens Assoc., Realcorp Investors I*, 715 F.Supp. 226, 229 (N.D. Ill. 1989) (barring conversion claim where "plaintiffs' alleged injuries amount[ed] to nothing more than economic loss."). In this case, Plaintiff seeks to recover for a purely bargained-for economic interest. Accordingly, its conversion claim is barred.

**IV.    The Conversion Claim Fails.**

Even if it were not barred by the *Moorman* doctrine, the conversion claim is still defective and should be dismissed with prejudice. Per the agreement at issue here, E-MedRx was supposed to handle administrative functions and pay the funds it received from insurance companies and other payors to Plaintiff, which is the subject of the contract, not consideration for the contract. In *Schlessinger v. Chicago Hous. Auth.*, No. 12 C 3733, 2013 WL 2434704, at *9 (N.D. Ill. June

5

3, 2013), the Court dismissed, with prejudice, the plaintiff's conversion claim against both the CHA and its officials, who the plaintiff had named as individual defendants.  In that case, the plaintiff argued that he stated a claim for conversion because he had alleged the CHA failed to pay him money (federal rent subsidies) that was to be passed through the CHA from the federal government pursuant to a contract between him and the CHA.  That is analogous to this case, where Plaintiff is alleging that E-MedRx failed to pass on funds from insurance companies and other payors to Plaintiff pursuant to their Agreement (ECF No. 13, Ex. A).  *See* ECF No. 13, ¶¶ 9-15.  Such an alleged failure to pay money is not conversion, the *Schlessinger* Court held, because plaintiff had "failed to identify specific money that has allegedly been converted."  *Id*.  As stated above, Plaintiff has continuously failed to identify the specific amount of monies allegedly converted by E-MedRx.  Therefore, following *Schlessinger*, this Court should dismiss Plaintiff's conversion claim, Count V, with prejudice.

**V.      The Breach of Fiduciary Duty Claim Fails.**

Plaintiff also argues a fiduciary duty existed based on an alleged principal-agent relationship between Plaintiff and E-MedRx, citing the *limited* power of attorney form ("POA") in which Plaintiff authorized E-MedRx to collect payments and forward them to Plaintiff.  But that POA is far too narrow to establish the existence of a fiduciary duty, and in fact the POA is so limited E-MedRx has virtually no discretion that a fiduciary would normally be expected to have other than collecting and forwarding money.  In other words, Plaintiff's attempt to save the breach of fiduciary duty claim is another example of Plaintiff asking this Court to fit a square peg into a round hole.  It does not fit.  An examination of the POA reveals it is designed to allow the parties to conduct business more efficiently, rather than to create some extracontractual duty that obligates E-MedRx to "treat [Plaintiff] with utmost loyalty and care."  ECF No. 18, p. 22.  Moreover, the

6

caretaker and familial cases Plaintiff cites in support of the creation of a special relationship are inapposite and unsupportive of its position. *See id*.

Simply put, there are no facts in the Complaint to suggest either a principal-agency relationship or a fiduciary duty. A principal-agent relationship exists "when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Schultz v. Arrow Fin. Servs., LLC*, 465 F.Supp.2d 872, 877 (N.D. Ill. 2006) (noting standard for principal-agency relationship is the same under Illinois and federal law) *citing* Restatement (Third) of Agency § 1.01 (2006) and *Valenti v. Qualex, Inc.*, 970 F.2d 363, 368 (7th Cir. 1992)) ("The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal."). Plaintiff's breach of fiduciary duty claim is predicated on the allegation that E-MedRx "breached its duty by failing to properly process payments on behalf of Plaintiff," which is no different that alleging E-MedRx breached the Agreement. Although Plaintiff uses words such as "loyalty" and "care," it fails to allege any facts demonstrating a fiduciary duty was actually owed.

Further, Plaintiff fails to address E-MedRx's argument that a contractual business relationship does not give rise to a fiduciary relationship. Nor can Plaintiff contend that E-MedRx had any dominance or control over Plaintiff, let alone the type of control that might give rise to a fiduciary duty. There is no language from the contract or limited power of attorney that supports Plaintiff's dramatic and sweeping claim of a fiduciary relationship between sophisticated parties. As such, the Court should reject this argument.

## VI. The Accounting Claim Fails.

As argued above and in Defendants' Memorandum of Law in Support of its Motion to Dismiss, Plaintiff has failed to allege a breach of fiduciary duty or fraud. Additionally, Plaintiff without question has an adequate remedy at law to recover the funds it allegedly lost, namely by showing through admissible evidence a breach of the Agreement and the proof of actual damages. Where there are insufficient allegations of breach of fiduciary duty or fraud, and where Plaintiff has an adequate remedy at law, Plaintiff cannot obtain the equitable relief of an accounting. *See Mann v. Kemper Financial Companies, Inc.*, 247 Ill.App.3d 966, 980 (1st Dist. 1992).

Moreover, Count VI of Plaintiff's Complaint merely recites the elements of an accounting claim, without alleging any facts to support this cause of action. By the same token, Plaintiff's Response does not provide support for its accounting claim, or attempt to refute the arguments contained in Defendants' memo of law, but instead simply states the elements necessary to plead an accounting claim. Most notably, the only two cases Plaintiff cites in Section VI of its Response (ECF No. 18, p. 25) are inapposite. The Court in *CustomGuide* dismissed the plaintiff's accounting claim on the defendant's motion to dismiss, and the *Kempner* Court similarly ruled that the district court did not err in its refusal to allow the plaintiff an accounting. *See CustomGuide v. CareerBuilder, LLC*, 813 F.Supp.2d 990, 1003 (N.D. Ill. 2011) and *Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005). Therefore, the Court should dismiss Count VI of Plaintiff's Complaint with prejudice.

## VII. The RICO Claim Fails.

The only allegations in Count VII of Plaintiff's Amended Complaint that relate to racketeering activity reference "e-mails, writings" and "many emails," in paragraphs 93 and 98, respectively. (ECF No. 13, ¶¶ 93, 98). In a subsequent paragraph, Plaintiff states that, "[a]s a

result of Defendants' racketeering activity, Plaintiff has suffered and continues to suffer damages …" *Id.* at ¶ 101. These allegations are general, conclusory, and lack any factual support. Simply making general claims about a group of predicate acts is insufficient. *Kelly v. Health Benefits Pain Mgmt. Servs., LLC*, No. 13 C 4539, 2014 WL 714025, at *2 (N.D. Ill. Feb. 24, 2014); *see Martinek v. Diaz*, 2012 WL 2953183, at *11 (N.D. Ill. July 18, 2012) (explaining that predicate acts cannot simply be grouped together, but, rather, a complaint must identify and describe specific instances). Plaintiff clearly fails to identify even one specific fraudulent communication and describe its time, place and content. Consequently, Plaintiff has not properly alleged a pattern of racketeering activity. *See Kelly* at *2.

Moreover, Plaintiff's RICO claim must be dismissed because Plaintiff fails to identify the enterprise. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009) (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995)) (noting this requirement for a RICO complaint). A RICO enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 388 (7th Cir. 2010) (quoting *Boyle v. United States*, 129 S.Ct. 2237, 2244 (2009)) (internal quotation marks omitted). An allegation of purpose must assert that defendants "had any interest in the outcome of the alleged scheme beyond their own individual interests." *Guaranteed Rate, Inc. v. Barr*, 912 F.Supp.2d 671, 687 (N.D. Ill. 2012). Plaintiff alleges that "Drennan has derived income from her own and E-MedRx's racketeering activity," and that "Defendants devised or intended to devise a scheme to defraud Plaintiff." (ECF No. 13, ¶¶ 93, 99). These allegations do not adequately describe the enterprise's purpose. Instead, they inadequately attempt to depict what the fraud was and how it was allegedly perpetrated. No allegation in Count VII describes a

9

resulting benefit, such as increased profits, that Drennan and E-MedRx gained, or at least believed they would gain, because of their alleged fraud. Consequently, Plaintiff also has not properly alleged a purpose and, thus, the Complaint fails to allege a RICO enterprise. *See Kelly* at *3. Accordingly, this Court should dismiss Count VII with prejudice.

### VIII. The Individual Claims Against Drennan Fail.

First, Plaintiff appears to direct only its claims for fraud, conversion, RICO, and violation of the Consumer Fraud and Deceptive Business Practices Act against Drennan in her personal capacity. As such, Plaintiff raises no opposition to Defendants' request that the other counts – breach of contract (Count I and Count II), breach of fiduciary duty, and accounting – should all be dismissed as to Drennan. In the absence of written opposition, the Court "will presume there is no opposition to the motion." (L.R. 7.1(B)(2)).

Second, the cases cited in Plaintiff's Response are distinguishable in that they discuss the alter ego theory of liability in the context of a parent company and its subsidiaries, as opposed to the instant case, which involves an individual and a corporation. (ECF No. 18, p. 29). Plaintiff directs the Court to one bare allegation contained in Plaintiff's Complaint, which contains the conclusory statement that "Drennan's actions and inaction on behalf of E-MedRx … in an attempt to defer the responsibilities of the corporation demonstrate such unity of interest and ownership in E-MedRx that the separate personalities of the corporation and Drennan no longer exist." (ECF No. 13, ¶ 41). This allegation does not come close to making "a substantial showing that the corporation is really a dummy or sham for a dominating personality." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 380 (7th Cir. 2008) (citation omitted).

Not only are there no allegations suggesting Drennan used E-MedRx for her personal benefit, Plaintiff does not plead that Drennan commingled personal funds with funds in E-

MedRx's account(s), or do anything else to suggest that she personally was a "dominant personality" deserving of individual liability. *See Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 615 (7th Cir. 2009). In addition to the Complaint being completely devoid of allegations indicating why E-MedRx was a sham entity for Drennan, Plaintiff fails to provide sufficient similar allegations suggesting that Drennan could be personally liable under the piercing the corporate veil theory. Plaintiff alleges in a conclusory fashion that Drennan and E-MedRx's relationship created a "fiction of separate corporate existence." (ECF No. 13, ¶ 41). Plaintiff fails, however, to allege sufficient specific facts to support such a conclusion. *Trustees of the Chicago Reg'l Council of Carpenters Pension Fund v. Joyce Bros. Storage & Van Co.*, No. 15 C 1584, 2016 WL 910504, at *2 (N.D. Ill. Mar. 10, 2016); *see Laborers' Pension Fund*, 580 F.3d at 610 (stating that a plaintiff must show that the defendant "use[d] a corporation merely as an instrumentality to conduct that person's … business"). The facts alleged in Plaintiff's Complaint do not suggest that there was a corporate fiction that would lead to injustice or to support the extraordinary step of holding Drennan personally liable in this case. *See id*.

Third, Plaintiff offers no refutation of the case law cited in Defendants' memo of law, that "Personal liability for actions taken on behalf of the corporation attaches only when the officer or director is alleged to have taken part in the wrongful act *initially giving rise to the corporation's liability*." (ECF No. 15, p. 20) (quoting *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill.App.3d 366, 372 (4th Dist. 2004) (emphasis added)). Notably, Plaintiff cites this case for the very same proposition in its Response. The very few allegations wherein Plaintiff names Drennan are all actions *after* the funds' disbursement, and so she cannot be held liable personally in tort. *See IOS Capital Inc.*, 348 Ill.App.3d at 372 (affirming judgment for corporate officer on conversion claim where he ordered his employees to keep copy machines in breach of lease, after his company had

11

stopped making payments on the lease, triggering conversion cause of action). Therefore, this Court should dismiss all counts against Drennan personally, with prejudice.

**IX.     Plaintiff's Claims for Treble, Exemplary, and Punitive Damages Should Be Stricken.**

As Defendants have consistently argued in Defendants' memo of law and in this Reply Brief, the four corners of the Agreement specifically preclude Plaintiff's claims for treble, exemplary and punitive damages. Plaintiff's causation theories would in effect, and contrary to settled law, render contract damages a penalty on the breaching party rather than compensation to the non-breaching party. That would run contrary to settled law, as "[t]he sole purpose of contract damages is to compensate the nonbreaching party, and punitive damages are not available even for a 'wil[l]ful' breach of contract." *Merry Gentleman, LLC v. George and Leona Productions, Inc.*, 76 F.Supp.3d 756, 764 (N.D. Ill. 2014) (citation omitted). Defendants hereby request that the Court strike all such prayers for relief in excess of what is permitted to be recovered by the parties.

## CONCLUSION

For the reasons set forth above, and in Defendants' motion and memo of law in support thereof (ECF Nos. 14, 15), Defendants E-MEDRX SOLUTIONS, INC. and DEBBIE DRENNAN respectfully request that the Court grant their Motion to Dismiss the First Amended Complaint (ECF No. 14) and enter an Order dismissing the Amended Complaint (ECF No. 13) with prejudice and/or striking the defective allegations with prejudice, and for such further and additional relief this Court deems just and appropriate.

---

Dated: March 18, 2020                                         Respectfully submitted,

                                                          E-MEDRX SOLUTIONS, INC. and
                                                          DEBBIE DRENNAN

                                                          */s/ Patrick R. Moran*
                                                          One of their attorneys

James B. Novy
Patrick R. Moran
ROCK FUSCO & CONNELLY, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000 – Tel.
312.494.1001 – Fax
jnovy@rfclaw.com
pmoran@rfclaw.com

13